# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 3, 2005 Session

# FREEMAN INDUSTRIES, LLC v. EASTMAN CHEMICAL COMPANY, ET AL.

### Appeal by Permission from the Court of Appeals
### Circuit Court for Sullivan County
### No. C34355-L     Richard E. Ladd, Chancellor

---

### No. E2003-00527-SC-S09-CV - Filed August 25, 2005

---

We granted permission to appeal to determine: 1) whether an indirect purchaser may bring an action under the Tennessee Trade Practices Act against defendants involved in an price-fixing scheme; 2) whether the conduct complained of falls within the scope of the act; and 3) whether the trial court erred in declining to grant summary judgment to the defendants as to the plaintiff's unjust enrichment claim. We conclude that although an indirect purchaser may bring an action under the Tennessee Trade Practices Act, the conduct complained of in this case did not substantially affect Tennessee commerce and thus falls outside the scope of the act. We further conclude that to sustain an unjust enrichment claim, the plaintiff is not required to: 1) establish that the defendants received a direct benefit or 2) exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile. Because the plaintiff failed to provide a factual basis to support its bare allegation that any attempt to exhaust its remedies would have been futile, the trial court erred in failing to grant the defendants' motion for summary judgment on the unjust enrichment claim. Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings in accordance with this opinion.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part; Reversed in Part; Remanded to the Trial Court

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Barry C. Barnett, Dallas, Texas; Daniel R. Karon, Cleveland, Ohio; Isaac L. Diel and Rex A. Sharp, Prairie Village, Kansas; John S. Bingham, Kingsport, Tennessee; and Todd R. Seelman, Denver, Colorado, for the appellant, Freeman Industries, LLC.

Herbert S. Washer, New York, New York, and Morris Hadden, Kingsport, Tennessee, for the appellee, Daicel Chemical Industries, Ltd.

Michelle K. Fisher and Thomas Demitrack, Cleveland, Ohio, and William T. Gamble, Kingsport, Tennessee, for the appellee, Eastman Chemical Company.

Jennifer B. Patterson and Michael D. Blechman, New York, New York, and Morris Hadden, Kingsport, Tennessee, for the appellees, Hoechst Aktiengesellschaft and Nutrinova Nutrition Specialities & Food Ingredients, GmbH.

Eugene G. Illovsky, Walnut Creek, California, and Morris Hadden, Kingsport, Tennessee, for the appellee, Nippon Gohsei Industries, Ltd.

**OPINION**

Defendant Eastman Chemical Co. ("Eastman") is a Delaware corporation with its principal place of business in Kingsport, Tennessee. Defendants Hoechst Aktiengesellschaft ("Hoechst") and Nutrinova Nutrition Specialities & Food Ingredients, GmbH ("Nutrinova") are German corporations with principal places of business in Frankfurt, Germany. Defendants Daciel Chemical Industries, Ltd. ("Daciel") and Nippon Gohsei Industries, Ltd. ("Nippon") are Japanese corporations with principal places of business in Tokyo and Osaka, Japan, respectively. Eastman, Hoechst, Nutrinova, Daciel, and Nippon (collectively "defendants") are producers of sorbates. Sorbates are food preservatives used in small quantities in high-moisture and high-sugar products to slow the growth of mold.

Between 1998 and 2001, each defendant pleaded guilty to fixing the prices of sorbates in violation of the Sherman Antitrust Act. See 15 U.S.C. § 1 (1997). The defendants also have settled federal lawsuits brought by a nationwide class of direct purchasers of sorbates as well as lawsuits brought by indirect purchasers in fourteen states, including Tennessee, and the District of Columbia.

Plaintiff Freeman Industries, LLC ("Freeman") is a New York corporation with its principal place of business in Tuckahoe, New York. Freeman is an end-user of food products containing sorbates and purchases these products at supermarkets in New York. Freeman, as an indirect purchaser of sorbates, filed a lawsuit against the defendants claiming a violation of the Tennessee Trade Practices Act ("TTPA"), Tenn. Code Ann. § 47-25-101 *et seq.* (2001), and unjust enrichment.

The trial court granted the defendants' motion to dismiss Freeman's TTPA claim. The trial court concluded that the TTPA does not apply to indirect purchasers or to transactions occurring outside of Tennessee. The trial court denied the defendants' motion for summary judgment as to Freeman's unjust enrichment claim.

On interlocutory review, the Court of Appeals concluded that although indirect purchasers may recover under the TTPA, the act does not apply to indirect purchasers who are not "Tennessee consumers." The Court of Appeals further concluded that Freeman could not recover under the TTPA because it failed to establish that it "had a transaction *in Tennessee* that was substantially affected by the defendants' illegal conduct." With respect to Freeman's unjust enrichment claim,

the Court of Appeals held that a plaintiff is not required to confer a direct benefit upon a defendant to proceed with a claim for unjust enrichment. The Court of Appeals therefore modified the portion of the trial court's judgment that held that the TTPA is not applicable to indirect purchasers and affirmed the trial court's judgment in all other respects. We granted review.

## ANALYSIS

### A. Tennessee Trade Practices Act

We must first decide whether the trial court erred in granting the defendants' motion to dismiss Freeman's TTPA claims pursuant to Tennessee Rule of Civil Procedure 12.02(6). A motion to dismiss a complaint for failure to state a claim pursuant to Rule 12.02(6) "admits the truth of all of the relevant and material allegations contained in the complaint, but it asserts that the allegations fail to establish a cause of action." Leach v. Taylor, 124 S.W.3d 87, 90 (Tenn. 2004). When reviewing a dismissal of a complaint under Rule 12.02(6), we must take the factual allegations of the complaint as true and review the trial court's legal conclusions de novo without any presumption of correctness. Id.

### 1. Indirect Purchasers

Tennessee Code Annotated section 47-25-106 (2001) provides for a civil remedy against those who violate the TTPA. Section 47-25-106 states that:

> [a]ny person who is injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent jurisdiction, from any person operating such trust or combination, the full consideration or sum paid by the person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust.

By providing a civil remedy to "[a]ny person who is injured or damaged" as the result of violations of the TTPA, the plain language of section 47-25-106 provides a cause of action to indirect purchasers. See City of Cookeville ex rel. Reg'l Med. Ctr. v. Humphrey, 126 S.W.3d 897, 902 (Tenn. 2004) (providing that where the language of a statute is clear and unambiguous, we must apply the statute in accordance with its plain language). Contrary to the Court of Appeals' holding, the plain language of section 47-25-106 does not prohibit recovery to indirect purchasers who are non-residents of Tennessee. Moreover, sections 47-25-101 and -102[1] (2001) prohibit price fixing

---

[1] Tennessee Code Annotated section 47-25-101 (2001) provides that

All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between

(continued...)

-3-

agreements that tend to affect the price to the "producer or consumer" of such products. These statutes reflect a clear intent to protect and afford a remedy to ultimate consumers.

This Court has identified two purposes of the TTPA. See Baird v. Smith, 161 S.W. 492, 493 (Tenn. 1913). The first purpose is to preserve full and free competition in the sale of merchandise that "had become a part of the mass of property in the State." Id. The second purpose is to preserve full and free competition in the manufacture and sale of "articles of domestic growth and domestic raw material" and to prevent combinations tending to affect the price or cost of these articles to the producer or consumer. Id. We believe that permitting indirect purchasers to recover under the TTPA promotes these purposes.

The defendants contend that the language of Tennessee Code Annotated section 47-25-106 permitting recovery of "the full consideration or sum paid by the person" for the products, "the sale of which is controlled by such combination or trust," limits recovery to direct purchasers. According to the defendants, the only sale "controlled by" an antitrust violator is the transaction between the violator and the direct purchaser. We believe that their argument is flawed. First, "control" means "[p]ower or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee" as well as "[t]he ability to exercise a restraining or directing influence over something." Black's Law Dictionary 329 (6th ed. 1990). A sale "controlled by" an antitrust violation includes not only a sale made by the violator to the direct purchaser but also a transaction between the direct purchaser and the consumer in which the price of the product purchased by the consumer is influenced by the antitrust violator's conduct.

Second, we believe that this language pertains not to persons who may recover but to the recovery itself. A plain reading of section 47-25-106 permits a person to recover the consideration or sum that was "controlled by" or influenced by the antitrust violator. In other words, an indirect purchaser may recover from the antitrust violator the amount of the overcharge that the direct purchaser passed on to the indirect purchaser.[2]

---

[1](...continued)

persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

Tennessee Code Annotated 47-25-102 prohibits agreements "to sell and market . . . products and articles, manufactured in this state, or imported into this state, to any producer or consumer at prices reduced below the cost of production or importation into this state." The statute further prohibits "any other arrangements, contracts, or agreements, by and between its agents and subagents, which tend to lessen full and free competition in the sale of all such articles manufactured and imported into the state, and which amount to a subterfuge for the purpose of obtaining the same advantage and purposes."

[2] The defendants contend that permitting Freeman to recover the full consideration that it paid to the direct purchaser for the food products violates the constitutional principles of fairness and due process. Because we interpret Tennessee Code Annotated section 47-25-106 as permitting Freeman to recover only the amount of the overcharge that the direct purchaser passed on to Freeman, we need not reach this issue.

Third, we conclude that the United States Supreme Court's holding in <u>Illinois Brick Co. v. Illinois</u>, 431 U.S. 720 (1977), does not require a different result. In that case, the Supreme Court held that "the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property' within the meaning of [section 4 of the Clayton Act]."[3] <u>Illinois Brick Co.</u>, 431 U.S. at 729. Thus, indirect purchasers do not have a cause of action under federal antitrust law because they do not suffer a legally cognizable injury. <u>See id.</u> The Court in <u>Illinois Brick Co.</u> was concerned that permitting offensive use of the "pass-on" theory by indirect purchasers would create: 1) a risk of recovery of the entire overcharge by both the direct and indirect purchasers, resulting in multiple liability for the defendant; 2) difficulty in apportioning the responsibility for the overcharge among those in the chain of distribution; and 3) lack of incentive for direct purchasers to bring suit. <u>Id.</u> at 737-38. The Court further reasoned that permitting indirect purchasers to bring suit would result in highly complex litigation due to the necessity of determining the amount of the overcharge passed on to the indirect purchasers. <u>Id.</u> at 732.

The Supreme Court's holding in <u>Illinois Brick Co.</u>, however, applies only to federal antitrust law. Clearly, states may provide a remedy to indirect purchasers under their own antitrust laws. <u>California v. ARC Am. Corp.</u>, 490 U.S. 93, 103 (1989).

In response to <u>Illinois Brick Co.</u>, many states amended their antitrust statutes to either provide indirect purchasers with a private right of action or permit the state's attorney general to bring an action as *parens patriae* on behalf of indirect purchasers.[4] The defendants identify various failed attempts by the Tennessee legislature to amend the TTPA to expressly permit indirect purchaser claims in support of its contention that the TTPA does not currently provide for such suits. While legislative inaction is generally irrelevant to the interpretation of existing statutes, the legislature's failure to "express disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction." <u>Hamby v. McDaniel</u>, 559 S.W.2d 774, 776 (Tenn. 1977); <u>see</u> <u>Forman, Inc. v. Nat'l Council on Comp. Ins., Inc.</u>, 13 S.W.3d 365, 373 (Tenn. Ct. App. 1999).

---

[3] Section 4 of the Clayton Act, 15 U.S.C. § 15, provides:

[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

[4] <u>See, e.g.</u>, Ala. Code § 6-5-60 (2004); Cal. Bus. & Prof. Code § 16750 (1987); Colo. Rev. Stat. § 6-4-111 (1992); D.C. Code Ann. § 28-4509 (1981); Haw. Rev. Stat. §§ 480-3 (1987),480-13 (2002), 480-14 (2003); 740 Ill. Comp. Stat. 10/7 (2003); Kan. Stat. Ann. § 50-161 (2000); Me. Rev. Stat. Ann. tit. 10, § 1104 (2004); Mich. Comp. Laws § 445.778 (1985); Minn. Stat. § 325D.57 (1984); Miss. Code Ann. § 75-21-9 (2005); Neb. Rev. Stat. § 59-821 (2002); Nev. Rev. Stat. § 598A.210 (1999); N.M. Stat. Ann. § 57-1-3 (1979); N.Y. Gen. Bus. Law § 340 (1999); N.D. Cent. Code § 51-08.1-08 (1991); Or. Rev. Stat. § 646.775 (2001); R.I. Gen. Laws § 6-36-12 (1979); S.D. Codified Laws § 37-1-33 (1991); Vt. Stat. Ann. tit. 9, § 2465 (1999); Wis. Stat. § 133.18 (1987).

The present case, however, involves the Tennessee legislature's failure to amend a state statute in response to a federal court's interpretation of a federal statute. Furthermore, the United States Supreme Court has emphasized that its holding in Illinois Brick Co. applies only to federal antitrust law. ARC Am. Corp., 490 U.S. at 103. This case is this Court's first opportunity to address the issue of whether indirect purchasers have a cause of action under the TTPA. Under these circumstances, it is

> impossible to assert with any degree of assurance that [legislative] failure to act represents (1) approval of the status quo, as opposed to (2) inability to agree upon how to alter the status quo, (3) unawareness of the status quo, (4) indifference to the status quo, or even (5) political cowardice.

Johnson v. Transp. Agency Santa Clara County, Cal., 480 U.S. 616, 672 (1987) (Scalia, J., dissenting). Therefore, we, like other jurisdictions, decline to presume that our state legislature considered Illinois Brick Co. as affecting the TTPA and thus requiring an amendment to the current statute.

Furthermore, unlike many states that have applied Illinois Brick Co. in disallowing indirect purchasers from bringing a private action under their antitrust laws, Tennessee does not have a statutory "harmony clause" mandating courts to interpret the TTPA consistently with federal law. Cf. Stifflear v. Bristol-Myers Squibb Co., 931 P.2d 471, 476 (Colo. Ct. App. 1996); Vacco v. Microsoft Corp., 793 A.2d 1048, 1056 (Conn. 2002); Davidson v. Microsoft Corp., 792 A.2d 336, 341 (Md. Ct. Spec. App. 2002); Major v. Microsoft Corp., 60 P.3d 511, 513 (Okla. Ct. App. 2002); Siena v. Microsoft Corp., 796 A.2d 461, 464 (R.I. 2002); Abbott Labs., Inc. v. Segura, 907 S.W.2d 503, 505 (Tex. 1995). Thus, we join other jurisdictions in declining to interpret Illinois Brick Co. as precluding indirect purchasers from bringing suit under the TTPA. See Bunker's Glass Co. v. Pilkington PLC, 75 P.3d 99, 107 (Ariz. 2003); Comes v. Microsoft Corp., 646 N.W.2d 440, 445 (Iowa 2002); Hyde v. Abbott Labs., Inc., 473 S.E. 2d 680, 686-87 (N.C. Ct. App. 1996); Arthur v. Microsoft Corp., 676 N.W.2d 29, 38 (Neb. 2004).

In addition, the concerns identified by the United States Supreme Court in Illinois Brick Co. do not justify prohibiting indirect purchaser suits under the TTPA. The Supreme Court expressed concerns regarding the possibility of multiple liability. Illinois Brick Co., 431 U.S. at 730. The risk that an antitrust violator may be subject to both a direct purchaser suit and an indirect purchaser suit under the TTPA does exist. Our trial courts, however, are competent to handle such a problem. See Bunker's Glass Co., 75 P.3d at 108; Comes, 646 N.W.2d at 449-50. In fact, many Illinois Brick Co. repealer statutes leave the solution of the risk of multiple liability to the trial courts. Bunker's Glass Co., 75 P.3d at 108 (citing statutes from Illinois, New Mexico, and South Dakota).

The Supreme Court also expressed concern regarding the decreased incentive for direct purchasers to bring suit. Illinois Brick Co., 431 U.S. at 745. The Court, however, recognized that direct purchasers likely will not bring suit due to fear of retaliation by their suppliers. Id. at 746. Rather, the direct purchasers frequently pass on the overcharge to the indirect consumers who are

the injured parties.  Id. at 764 (Brennan, J. dissenting); Comes, 646 N.W.2d at 450.  The Supreme Court conceded that by allowing only direct purchaser actions, the person "actually injured," the indirect purchaser who ultimately paid the overcharge, is not afforded redress.  Illinois Brick Co., 431 U.S. at 746.  Thus, the indirect purchasers, the real victims of the antitrust violations, have the true incentive to bring suit.  By construing Tennessee Code Annotated section 47-25-106 (2001) as permitting indirect purchaser suits, we are affording a remedy to the ultimate victims of the antitrust conduct.  Accepting the defendants' position would leave such victims of illegal activity with no redress, a result that hardly comports with notions of fair play.

Finally, the Supreme Court expressed concern regarding the risk of highly complex litigation due to the difficulty in apportioning damages.  Id. at 745-47.  Antitrust, however, is a complex area of law and generally involves highly complex litigation.  See Comes, 646 N.W.2d at 451.  We do not believe that the ends of justice should be defeated simply because the risk of complicated litigation exists.  See id.

Accordingly, we conclude that an indirect purchaser may bring an action under Tennessee Code Annotated section 47-25-106 for conduct in violation of the TTPA even though the indirect purchaser is a non-resident of this state.

## 2.  Scope of the TTPA

We must next determine whether the conduct complained of falls within the scope of the TTPA.  Tennessee Code Annotated section 47-25-101 (2001) provides that

> [a]ll arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

This Court last addressed the reach of the TTPA in Standard Oil Co. v. State, 100 S.W. 705, 709 (1907), in which we held that this state's antitrust statutes did not apply to interstate commerce "when properly construed" and that the statute's purpose was to "correct and prohibit abuses of trade within the state."  At the time of this holding, a theory of dual sovereignty presuming mutually exclusive jurisdiction for state and federal regulation prevailed.  See Abbott Labs. v. Durrett, 746 So. 2d 316, 330-34 (Ala. 1999) (discussing the theory of dual sovereignty).

In Standard Oil Co., this Court reasoned that the state legislature knew it did not have the power to enact laws that regulated interstate commerce and thus did not intend to enact unconstitutional law.  100 S.W. at 710.  We further reasoned that the state legislature intended to

-7-

correct and punish the wrongs to trade that were being perpetrated against commerce within the state, which the Sherman Antitrust Act could not reach and for which no efficient remedy was available. Id. Thus, we concluded that "[t]he Legislature clearly intended to prohibit trusts, combinations, and agreements affecting all commerce not covered by the federal statute, and upon which it had a right to legislate. It did not intend to stop short of its power or to exceed it." Id. at 711.

The language of Tennessee's antitrust statutes have not changed significantly since Standard Oil Co. Compare Standard Oil Co., 100 S.W. at 707, with Tenn. Code Ann. § 47-25-101 (2001). In Standard Oil Co., however, this Court did not rely upon the plain language of this state's antitrust statutes in determining its scope. Rather, our holding was based upon two principles of statutory construction. First, courts have a duty to construe statutes in such a manner as to avoid conflict with the United States Constitution if the construction can be accomplished without disregarding the legislature's intent. Standard Oil Co., 100 S.W. at 710. Second, although a statute includes terms that are overly broad, courts have a duty to limit a statute's application to circumstances within the legislature's intent. Id. at 711. We based our holding upon the state legislature's constitutionally permitted scope of authority in the areas of antitrust law and interstate commerce that prevailed at that time as well as upon our duty to construe a statute so as to avoid any unconstitutionality.

The dual sovereignty theory presuming mutually exclusive jurisdiction for state antitrust laws and federal antitrust laws has since been rejected. The United States Supreme Court now considers state antitrust regulations to supplement and complement the federal antitrust laws and the enforcement of these state laws to be consistent with the federal antitrust laws. See ARC Am. Corp., 490 U.S. at 101-02. Furthermore, a state generally is not prohibited from giving effect to its antitrust laws merely because the regulation affects interstate commerce. See Standard Oil Co. v. Tenn., 217 U.S. 413 (1910). Specifically, a state antitrust regulation that has only incidental effects on interstate commerce and is regulated evenhandedly to effectuate a legitimate local interest does not run afoul of the Commerce Clause unless the burden imposed on interstate commerce is clearly excessive when compared to the punitive local benefits. See Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

In construing statutes, we must ascertain and give effect to the legislature's intent and purpose. See Lipscomb v. Doe, 32 S.W.3d 840, 844 (Tenn. 2000). Furthermore, we must construe a statute so as to avoid a constitutional conflict if any reasonable construction exists that satisfies the Constitution's requirements. Davis-Kidd Booksellers, Inc. v. McWherter, 866 S.W.2d 520, 529 (Tenn. 1993). Thus, in construing the reach of the TTPA, we must develop a standard that is consistent with the legislature's intent and purpose without offending constitutional provisions.

The TTPA prohibits agreements adversely affecting competition in the "sale of articles imported into this state" or influencing the "price or the cost to the producer or the consumer of any such product or article." Tenn. Code Ann. § 47-25-101 (2001). According to its plain language, the TTPA prohibits arrangements that decrease competition or affect the prices of goods even if those goods arrived in Tennessee through interstate commerce. The act does not contain any language indicating that the legislature intended that the scope of the act be limited to intrastate commerce.

Had the legislature intended such a limitation, the legislature simply could have included the limitation in the act.

In developing a standard for determining the application of the TTPA to a particular set of circumstances, we must determine whether the focus should be upon the anticompetitive conduct of the defendant or the effects of the anticompetitive conduct. In examining whether the circumstances of a particular case fall within the TTPA, the Court of Appeals has employed a conduct-based test focusing upon the character of the defendant's anticompetitive conduct giving rise to the dispute. See Lynch Display Corp. v. Nat'l Souvenir Ctr., Inc., 640 S.W.2d 837, 840 (Tenn. Ct. App. 1982) (holding that a lease between a Tennessee corporation and a Maryland corporation and an associated franchise agreement between a Tennessee corporation and a District of Columbia corporation were "predominantly interstate in character" and "only incidentally affect[ed] intrastate commerce"). Any test focusing upon the anticompetitive conduct giving rise to the dispute, however, would be difficult to apply when the plaintiff is an indirect purchaser who did not transact directly with the defendant.

Furthermore, the purpose of the TTPA is to protect the state's trade or commerce affected by the anticompetitive conduct. See State ex rel. Astor v. Schlitz Brewing Co., 59 S.W. 1033, 1039 (Tenn. 1900) ("The thing condemned and punished by the Act is injury to trade. The thing intended to be protected is trade. . . ."). Thus, we reject any standard that requires examination of the anticompetitive conduct in determining whether a particular case falls within the scope of the TTPA. Rather, the *effect* of the anticompetitive conduct on Tennessee trade or commerce is determinative of whether the TTPA is applicable under the circumstances.

We must now determine the standard to employ in examining whether the effects of the anticompetitive conduct on Tennessee trade or commerce fall within the scope of the TTPA. One possible standard is a "predominant effects" standard. The term "predominant" is defined as "[s]omething greater or superior in power and influence to others with which it is connected or compared." Black's Law Dictionary 1177 (6th ed. 1990). Thus, anticompetitive conduct cannot predominantly affect both intrastate commerce and interstate commerce. Under a "predominant effects" standard, courts would be required to weigh the effects of anticompetitve conduct on Tennessee commerce against its effects on interstate commerce and determine which effects are greater. If the effects on interstate commerce are greater than the effects on Tennessee commerce, the TTPA would not apply.

In construing the TTPA, other jurisdictions have utilized a "predominant" standard in applying a conduct-based test. See e.g., In re Terazosin Hydrochloride Antitrust Litig., 160 F. Supp. 2d 1365, 1378 (S.D. Fla. 2001); FTC v. Mylan Labs., Inc., 99 F. Supp. 2d 1, 4 (D.C. Cir. 1999). In our modern society, however, interstate and international transactions have become more common. Numerous technological advances, including the internet, enable consumers and businesses from opposite areas of the country to engage in transactions with ease. See generally, John Rothchild, Protecting the Digital Consumer: The Limits of Cyberspace Utopianism, 74 Ind. L.J. 893 (1999) (discussing the increase in business-to-consumer online commerce). Adoption of a predominant

effects standard would render the TTPA obsolete except in those rare circumstances in which the effects on intrastate commerce are greater than the effects on interstate commerce. We do not believe that this standard is sufficient to advance the TTPA's purpose of protecting Tennessee trade and commerce.

We conclude that the proper standard for determining whether a case falls within the scope of the TTPA is a "substantial effects" standard. Pursuant to this standard, courts must decide whether the alleged anticompetitive conduct affects Tennessee trade or commerce to a substantial degree. Federal courts have applied the substantial effects standard to the Sherman Antitrust Act. See Hartford Fire Ins. Co. v. California, 509 U.S. 764, 796 (1993) (concluding that "the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States"); McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 242 (1980) (holding that "[t]o establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce" generated by activity that is primarily local in nature). Other states also apply a form of substantial effects standard in determining whether an action falls within their antitrust statute. See e.g., Amarel v. Connell, 248 Cal. Rptr. 276, 284 (Cal. Ct. App. 1988) (holding that a cause of action under California's antitrust law is not precluded so long as the anticompetitive conduct had a "direct, substantial and reasonably foreseeable effect within the state"); Olstad v. Microsoft Corp., 700 N.W.2d 139 (Wis. 2005) (concluding that Wisconsin's antitrust statute applies if the actionable conduct "'substantially affects' the people of Wisconsin and has impacts in [the] state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside [the] state"). We believe that a "substantial effects" standard furthers the TTPA's goal of protecting Tennessee commerce without offending constitutional provisions.

The determination of whether an effect is substantial does not involve "mathematical nicety." Anesthesia Advantage, Inc. v. Metz Group, 912 F.2d 397, 401 (10th Cir. 1990). Rather, the test is pragmatic, turning upon the particular facts of the case. See id. at 402; Huelsman v. Civic Ctr. Corp., 873 F.2d 1171, 1175 (8th Cir. 1989). The anticompetitive conduct, however, need not threaten the demise of Tennessee businesses or affect market prices to substantially affect intrastate commerce. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 745-47 (1976) (referring to the Sherman Antitrust Act).

In the present case, Freeman alleges that Eastman engaged in conduct from its principal place of business in Kingsport, Tennessee, including: 1) communicating with its co-defendants through in-person meetings, telephone calls, letters, and email resulting in an agreement to fix the prices of sorbates; 2) implementing the agreement by drafting price schedules and letters to third parties, adjusting prices and production volumes of sorbates, and taking orders and implementing sales to customers at the new prices; and 3) attempting to conceal its conduct by limiting the number of its employees having knowledge of the agreement. These allegations primarily relate to the defendants' actions in conspiring and implementing the conspiracy to fix the prices of sorbates.

The focus under the substantial effects standard, however, is not on the anticompetitive conduct itself but on the *effects* of the conduct on Tennessee commerce. While Freeman alleged that Eastman took orders and implemented sales to customers at the new prices from Tennessee, we do not believe that this bare allegation without more is sufficient to establish that Tennessee commerce was substantially affected. Furthermore, Freeman fails to establish how the defendants' anticompetitive conduct affected Tennessee commerce to a substantial degree even though the conduct resulted in Freeman paying higher prices to retailers for items containing sorbates. To the contrary, there is no indication that the items that Freeman purchased contained sorbates manufactured by Eastman, the lone defendant with ties to Tennessee. Therefore, we conclude that Freeman's claim does not fall within the scope of the TTPA and that the trial court properly granted the defendants' motion to dismiss Freeman's claim.

## B. Unjust Enrichment

We must next determine whether the trial court erred in denying the defendants' motion for summary judgment regarding Freeman's claim of unjust enrichment. Summary judgment is appropriate only when the moving party demonstrates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. See Tenn. R. Civ. P. 56.04; Penley v. Honda Motor Co., 31 S.W.3d 181, 183 (Tenn. 2000). Its purpose "is to resolve controlling issues of law rather than to find facts or resolve disputed factual issues." XI Props., Inc. v. Racetrac Petroleum, Inc., 151 S.W.3d 443, 446 (Tenn. 2004) (citation omitted). Thus, we must review a trial court's decision to grant or deny summary judgment de novo with no presumption of correctness attached to the trial court's conclusions. See Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000). We must also view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in the non-moving party's favor. Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000).

We have previously recognized two types of implied contracts: contracts implied in fact and contracts implied in law. See Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 153-54 (Tenn. 1966). Contracts implied in fact arise under circumstances establishing the parties' mutual intention to contract. Id. at 154 (citation omitted). Contracts implied in law or quasi contracts are created by law without the parties' assent and are based upon reason and justice. Id. (citation omitted); Angus v. City of Jackson, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997). Courts may impose a contract implied in law where no contract exists under various quasi contractual theories, including unjust enrichment. Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998).

The elements of an unjust enrichment claim are: 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." Paschall's, Inc., 407 S.W.2d at 155. The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust. Id.; Whitehaven Cmty. Baptist Church, 973 S.W.2d at 596. The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of

contract. Paschall's, Inc., 407 S.W.2d at 155; Whitehaven Cmty. Baptist Church, 973 S.W.2d at 596.

A plaintiff need not be in privity with a defendant to recover under a claim of unjust enrichment. See Paschall's, Inc., 407 S.W.2d at 154. Thus, Freeman may bring a cause of action for unjust enrichment against the defendants even though Freeman did not purchase the items containing sorbates directly from the defendants. The defendants, however, contend that Freeman must establish that it conferred a direct benefit, rather than an indirect or incidental benefit, upon the defendants. A benefit is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss. Lawrence Warehouse Co. v. Twohig, 224 F.2d 493, 498 (8ᵗʰ Cir. 1955). The underlying principle of the doctrine of unjust enrichment is that a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit. Paschall's, Inc., 407 S.W.2d at 154. In accordance with this underlying principle, we conclude that to recover for unjust enrichment, a plaintiff need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust. Our conclusion is consistent with other jurisdictions that have also concluded that the benefit received by a defendant need not be direct to establish an unjust enrichment claim. See, e.g., Hirsch v. Bank of Am., 132 Cal. Rptr. 2d 220, 229 (Cal. App. 2003) (holding that to confer a benefit, the plaintiff need not pay the money directly to the defendant); HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 679 (Ill. 1989) (permitting recovery of a benefit transferred to the defendant by a third party where the third party mistakenly gave the benefit to the defendant instead of the plaintiff, where the defendant procured the benefit from the third party through wrongful conduct, or where the plaintiff's claim to the benefit is superior to the defendant's claim); State v. ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 155 (Iowa 2001) (concluding that "benefits can be direct or indirect, and can involve benefits conferred by third parties").

The defendants further contend that Freeman failed to establish that it exhausted its remedies against the supermarket from which it purchased the food products that contained sorbates. The defendants submitted various affidavits to demonstrate that Freeman had not sought to recover from the supermarket. We conclude that through these affidavits, the defendants have negated the exhaustion of remedies element of Freeman's unjust enrichment claim. Thus, the burden shifts to Freeman to provide specific facts establishing the existence of disputed issues of material fact that must be resolved by the trier of fact. See Blair v. West Town Mall, 130 S.W.3d 761, 767 (Tenn. 2004).

In response, Freeman submitted an affidavit from its counsel maintaining that he was unaware of any viable claims against the supermarket. Freeman essentially contends that pursuit of any causes of action against the supermarket would have been futile. Although our courts have not addressed the issue of futility with regard to the exhaustion of remedies element of an unjust enrichment claim, our courts have recognized this exception in other causes of action with an exhaustion of remedies requirement. See e.g., Wilson v. Miller, 250 S.W.2d 575, 578 (Tenn. 1952)

(action by a union member to recover union funds pursuant to a union agreement); <u>Cantrell v. Walker Die Casting, Inc.</u>, 121 S.W.3d 391, 396 n.3 (Tenn. Ct. App. 2003) (ERISA action). Likewise, we conclude that to maintain an action for unjust enrichment, a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile. We do not believe, however, that a bare allegation that any attempt to exhaust its remedies against the supermarket would be futile without providing a factual basis to support the allegation is sufficient to establish a disputed issue of material fact as to the exhaustion-of-remedies element of Freeman's unjust enrichment claim against the defendants. Thus, the trial court erred in denying the defendants' motion for summary judgment.

## CONCLUSION

We conclude that although Freeman may bring a claim against the defendants under the TTPA as an indirect purchaser, the conduct of which Freeman complains does not fall within the scope of the act because Tennessee commerce was not substantially affected by the conduct. As to the unjust enrichment claim, we hold that Freeman was not required to establish that the defendants directly benefitted from the transaction between Freeman and the supermarket. We further hold, however, that the trial court erred in declining to grant the defendants' motion for summary judgment as to the unjust enrichment claim due to Freeman's failure to provide a factual basis to support its allegation that any attempt to exhaust its remedies against the supermarket would have been futile. Accordingly, we affirm the judgment of the Court of Appeals in part and reverse in part, and we remand the case to the trial court for further proceedings consistent with this opinion.

The costs of appeal are taxed to the appellant, Freeman Industries, and its sureties, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

-13-