IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 7, 2019 Session

## ACUTE CARE HOLDINGS, LLC v. HOUSTON COUNTY, TENNESSEE

**Appeal from the Chancery Court for Houston County**
**No. 2014-CV-434      David D. Wolfe, Chancellor**

_____

### No. M2018-01534-COA-R3-CV

_____

This appeal arises from an action filed by a healthcare management company against a county for breach of contract and unjust enrichment. The dispute centered on a financially distressed hospital, which the county wanted to purchase and lease to the healthcare company to manage. Thus, the county, the hospital, and the healthcare management company entered into a Letter of Intent to accomplish this goal. The Letter of Intent provided that the healthcare management company would loan funds to the owner of the hospital to keep the hospital operating while the county negotiated the asset purchase agreement. If the purchase of the hospital closed by the agreed-upon deadline, the county agreed to repay the healthcare management company for the amount loaned; however, if the purchase of the hospital did not close by the deadline, the county was not obligated to repay the loans to the hospital. After the asset purchase agreement did not close by the deadline set in the Letter of Intent, the county purchased the hospital and awarded the contract to manage the hospital to a company owned by the county's attorneys and refused to pay the healthcare management company the more than $1.2 million it loaned the hospital. Thereafter, the healthcare management company filed this action against the county for breach of contract and unjust enrichment. In its answer, the county denied breaching the contract because of the failure of the condition precedent, that the purchase of the hospital close by the agreed-upon deadline. Thereafter, the county filed a motion for summary judgment on the same ground and also moved to summarily dismiss the unjust enrichment claim because the Letter of Intent, which was an enforceable contract, precluded the claim. The healthcare management company responded by presenting evidence indicating that the county failed to act in good faith to close on the purchase of the hospital by the deadline in order to avoid its obligations to the healthcare management company. It also contended that its claim of unjust enrichment should not be dismissed unless the court determined that the Letter of Intent was an enforceable contract. The trial court summarily dismissed both claims on the finding the evidence was not sufficient to create a genuine dispute of material fact as to either claim. Having determined that the evidence was sufficient, we reverse and remand this case to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Robert E. Boston, Tera Rica Murdock, and Taylor J. Askew, Nashville, Tennessee, for the appellant, Acute Care Holdings, LLC.

Samuel P. Funk and Michael R. O'Neill, Nashville, Tennessee, for the appellee, Houston County, Tennessee.

**OPINION**

By the fall of 2001, the only hospital in Houston County, Patient's Choice Medical Center ("PCMC"), was in financial distress and in danger of closing its doors. Although the hospital had just recently obtained certification as a "Critical Access Medical Center,"[1] which would likely provide for a better financial future, but not in the immediate future, PCMC lacked the capital or revenue to continue operating long enough to benefit from the new certification. Because PCMC was Houston County's third largest employer and a critical provider of medical services to the community, in order to prevent the closure of the hospital, Houston County sought to purchase the hospital from PCMC and then lease it to a hospital management company.

Around the same time, Acute Care Holdings, LLC ("Acute Care"), which operated a nursing facility in Houston County, also considered buying PCMC but determined that it was not feasible to do so. Nevertheless, its inquiry into the matter ultimately resulted in the execution of a Letter of Intent among Houston County, Acute Care, and PCMC pursuant to which Houston County would endeavor to negotiate an asset purchase agreement with PCMC to purchase the hospital and its assets and then lease the hospital to Acute Care, which would manage the hospital.

The Letter of Intent, which was executed on February 29, 2012, established the conditions by which Acute Care agreed to loan funds to PCMC to sustain the hospital's operations while Houston County and PCMC negotiated an asset purchase agreement. In pertinent part, the Letter of Intent provided:

---

[1] The certification would allow the hospital to receive cost-based reimbursement from Medicare, rather than being bound by fixed-reimbursement rates.

As of March 1, 2012, [Acute Care] . . . and [PCMC] shall enter into an interim management agreement for the [PCMC] facility . . . wherein [Acute Care] agrees to assume operational authority and control of the Facility under [PCMC's] provider number and license, to the extent permitted by law, and to provide funding for certain improvements and operational expenses, ***to be reimbursed at a later date by [Houston County] to [Acute Care] if and when the Closing occurs***. [PCMC] shall execute one or more promissory notes . . . for all expenses paid by [Acute Care] for operation of the Facility in excess of the Facility's revenue during the interim management period, ***evidencing [PCMC's] obligation to repay such expenses in the event the closing does not occur***.

(Emphasis added).

The Letter of Intent further provided that once Houston County purchased the hospital, Houston County would lease the assets to Acute Care to operate and manage, stating:

Lease. As of the Closing, [Houston County] and [Acute Care] shall enter into a lease of the Assets ("Lease") containing the following terms:

a. Term: 5 years, with six, five year renewal options, with lessee right to terminate early with notice in the event of a regulatory change materially and adversely affecting the operations of the facility.
b. Rent: building rental shall be based on fair market value.
c. Purchase option: [Acute Care] shall have the option to purchase the leased property at the end of the initial lease term and each renewal term thereafter for fair market value.
d. Capital Expenditures: [Houston County] shall be responsible for payment of the expenses set forth on Exhibit "C" attached hereto.
e. Charitable care: [Houston County] acknowledges and agrees that the provision of charitable care to the Erin community is a desired and valuable service, and therefore agrees to reimburse [Acute Care] on a monthly basis for such charitable care and bad debt.

The Letter of Intent also provided a due diligence period whereby Acute Care would inspect PCMC's assets. The Letter of Intent also clarified the parties' obligations to one another when the Letter of Intent was canceled or expired:

[Acute Care] shall have 30 days from the date of this Letter of Intent ("Due Diligence Period") to fully inspect the Assets and, at its discretion, proceed with, or cancel the transaction. If canceled, no party shall have any further obligations to the others, except for the repayment of any promissory

note(s) signed by [PCMC] in favor of [Acute Care] for funds expended by [Acute Care] for payment of improvements and operating expenses during the interim management period. Unless [Acute Care], in its sole discretion, gives [PCMC] notice that it waives its rights to cancel the transaction, the transaction shall be deemed canceled at the end of the Inspection Period.

Based on the agreement, if Houston County closed on the purchase of the hospital within the agreed-upon deadline, Houston County would assume PCMC's obligations to Acute Care on the loans that kept the hospital in business. If, however, the purchase did not close in accordance with the Letter of Intent, Houston County would have no financial obligations to Acute Care.

Acting pursuant to the Letter of Intent, Acute Care periodically loaned PCMC the funds it needed to operate the hospital while Houston County and PCMC negotiated the asset purchase agreement. When Houston County and PCMC were unable to reach an agreement by the initial deadline, Acute Care, Houston County, and PCMC executed amendments to the Letter of Intent that extended the deadline to December 31, 2012, all the while Acute Care continued to financially support PCMC. As each loan was made, PCMC's president, Ray Shoemaker, executed promissory notes to memorialize its debt to Acute Care.

By November 25, 2012, Houston County still had not closed on the purchase of the hospital. Thus, Acute Care sent Houston County a new proposed Letter of Intent which provided that Acute Care would "continue to manage the Hospital pursuant to the existing interim management agreement . . . until the County acquires the Hospital, but in no event beyond January 10, 2013." It further provided that Houston County would execute a promissory note in Acute Care's favor to cover the cost of PCMC's November payroll. Houston County rejected the proposal.

Houston County did not close on the purchase of the hospital by the December 31 deadline; however, Houston County and PCMC executed a purchase agreement in March 2013, by which Houston County would not assume any of PCMC's liabilities. Additionally, instead of awarding the management contract to Acute Care, Houston County awarded the hospital management contract to an entity owned by the County's attorneys. Thereafter, Houston County refused to reimburse Acute Care for the money it expended to keep the hospital in business during negotiations.

On November 10, 2014, Acute Care filed a complaint for breach of contract and unjust enrichment in Houston County Chancery Court, alleging Houston County was liable to Acute Care for the more than $1.2 million Acute Care expended during the

interim management period.[2] In its answer, Houston County denied the allegations and asserted a number of affirmative defenses, including the failure of a condition precedent.

Houston County filed a motion for summary judgment on November 16, 2017, wherein it contended that the County was not obligated to reimburse Acute Care because it was undisputed the closing did not occur pursuant to the Letter of Intent; thus, Acute Care's only recourse was to seek reimbursement from PCMC or its president Ray Shoemaker.[3] Houston County also sought dismissal of the claim for unjust enrichment because that claim only applied when the parties did not have an enforceable contract, and it was undisputed that the parties had an enforceable contract.

In its response to the motion for summary judgment, Acute Care agreed that the purchase of the hospital did not close pursuant to the Letter of Intent, which was a condition precedent to Houston County's obligation to perform. However, Acute Care argued that the non-occurrence of a condition precedent is excused when the defendant prevents the condition from occurring. Acute Care alleged that Houston County's failure to negotiate an asset purchase agreement pursuant to the Letter of Intent was calculated to avoid the County's obligations to Acute Care, and it asked the trial court for additional time to conduct discovery so it could present evidence supporting that allegation. The court granted the continuance, and after taking additional discovery, Acute Care filed a supplemental response to Houston County's motion for summary judgment.

First, Acute Care contended that PCMC and Houston County reached an agreement for the purchase of the hospital as early as September 2012, well before the December 31 deadline, but the Mayor of Houston County failed to sign the agreement. As evidence, Acute Care submitted a resolution of the Houston County Board of Commissioners dated September 17, 2012, which acknowledged that the Commissioners reviewed Houston County's asset purchase agreement with PCMC and its management agreement with Acute Care and approved the agreements "in all particulars." The Commissioners then ordered the Mayor and County Clerk of Houston County "to execute, acknowledge, and deliver" the agreements on behalf of the County.

As further support, Acute Care submitted an email exchange, dated October 16 and 18, 2012, between Cindy Barnett, an attorney for Houston County, and a loan representative from the United States Department of Agriculture ("USDA"). The emails showed that Houston County had obtained a USDA loan to purchase the hospital and to reimburse Acute Care. In an email dated October 16, Ms. Barnett sent the USDA representative the asset purchase agreement, the management agreement, and the

---

[2] Plaintiff also asserted a claim for promissory estoppel but that claim is not the subject of this appeal.

[3] By this time, Ray Shoemaker was incarcerated in a federal prison for Medicare fraud.

Commissioners' resolution and indicated that the parties had agreed on all material terms, and they were ready to close on the purchase of the hospital. Acute Care also submitted the meeting notes from the December 6, 2012 meeting of the Houston County Board of Commissioners wherein the Commissioners approved the management agreement with Acute Care and directed the Mayor to execute the agreement.

For its part, Houston County presented evidence to refute the claim that it had reached an agreement with PCMC before the December 31, 2012 deadline. Supporting its contention, Houston County submitted the asset purchase agreement approved by the Commissioners on September 17, 2012, and noted that the agreement was missing the purchase price. Houston County argued that the Commissioners had approved a "form" of an asset purchase agreement but not the agreement itself because Houston County and PCMC had not settled on the material terms and did not come to an agreement on the material terms until March 2013. Houston County also submitted emails between Ms. Barnett and PCMC representatives sent in October 2012, showing that PCMC was not satisfied with the Commissioner-approved asset purchase agreement.

After a hearing on June 11, 2018, the trial court summarily dismissed Acute Care's breach of contract claim, ruling in pertinent part:

> While [Acute Care] argues that Houston County actually reached an agreement on an [asset purchase agreement] with PCMC and a management agreement with [Acute Care] but the county mayor refused to execute them, the plaintiff has not submitted any evidence which actually establishes that allegation. By contrast, Houston County submitted copies of the form of an [asset purchase agreement] and form of a management agreement adopted by the county commission, however those forms were incomplete in material terms . . . . The terms of the [Letter of Intent] made Houston County liable only if and when Houston County and PCMC reached an asset purchase agreement. That requirement never took place and therefore the breach of contract claim cannot be successful.

The trial court also granted Houston County's motion to summarily dismiss Acute Care's unjust enrichment claim, ruling that "a plaintiff cannot recover [on] an unjust enrichment claim where there is a valid contract, and it is undisputed that the [Letter of Intent] constituted a valid contract . . . ." This appeal followed.

STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*;

*Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When a defendant moves for summary judgment based on an affirmative defense such as failure of a condition precedent, the defendant must establish the elements of the affirmative defense before the burden shifts to the nonmovant. *See Carr v. Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. Tenn. R. Civ. P. 56.06. Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

**ANALYSIS**

We have determined that the dispositive issue concerning Acute Care's breach of contract claim is whether there is a genuine dispute of material fact that Houston County acted in good faith in negotiating an asset purchase agreement with PCMC by the deadline.

As for Acute Care's unjust enrichment claim, the dispositive issue is whether the Letter of Intent, as amended, constitutes an enforceable agreement between Houston County and Acute Care. We will consider each claim in turn.

I.    BREACH OF CONTRACT

A claim for breach of contract requires an enforceable contract, nonperformance amounting to a breach of the contract, and damages caused by the breach. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). Parties "are generally free to impose whatever conditions they may choose on . . . the performance of their contractual undertakings, and the performance or occurrence of these conditions is essential before they become obligated under the agreement." 13 Richard A. Lord, *Williston on Contracts* § 38:2 (4th ed.) (footnote omitted); *see Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. Ct. App. 1986). Therefore, failure of a condition precedent

is an affirmative defense that, if proven, will defeat the plaintiff's claim for breach of contract. *See Harlan v. Hardaway*, 796 S.W.2d 953, 957 (Tenn. Ct. App. 1990); *see also Branch Banking & Tr. Co. v. Hill*, No. E2018-00232-COA-R3-CV, 2019 WL 993441, at *9 (Tenn. Ct. App. Feb. 28, 2019). However, as explained by this court:

> Where a duty of one party to a contract is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence; non-performance of that duty when performance is due is a breach, and that has the further effect of excusing the non-occurrence of the condition itself, so that performance of the duty that was originally subject to its occurrence can become due in spite of its non-occurrence.

*German v. Ford*, 300 S.W.3d 692, 707 (Tenn. Ct. App. 2009) (quoting 13 Richard A. Lord, *Williston on Contracts* § 38:11 (4th ed. Supp. 2008)).

In its motion for summary judgment, Houston County contended that its contractual obligation to reimburse Acute Care was conditioned on Houston County's ability to negotiate an asset purchase agreement with PCMC and close by December 31, 2012. It further contended that the closing did not occur pursuant to the contract, and therefore, it had no obligation to perform. Houston County's contentions were not disputed; therefore, Houston County met its burden to show, at the summary judgment stage, that the facts establishing its affirmative defense were not in dispute.

In its supplemental response to Houston County's motion, Acute Care claimed that it was disputed whether Houston County actually reached an agreement before the deadline but prevented the closing from occurring to avoid its obligations to Acute Care. Under Tennessee law, if Houston County prevented the condition from occurring, then Houston County was liable for breach. *See id*. Therefore, we examine the evidence presented by both parties in a light most favorable to Acute Care to determine if a reasonable trier of fact could find in favor of Acute Care on this issue.

In support of its statement of disputed facts, Acute Care presented the September 17, 2012 resolution passed by the Houston County Board of Commissioners approving the asset purchase agreement and Houston County's management agreement with Acute Care, which stated in pertinent part:

> WHEREAS, the County hereby finds and determines that it is necessary and desirable for the County to enter into that certain Asset Purchase Agreement by and among the County, Patients' Choice Medical Center of Erin Tennessee LLC and Ray Shoemaker;

- 8 -

WHEREAS, the County hereby finds and determines that it is necessary and desirable for the County to enter into that certain Management Agreement by and between the County and Acute Care Holdings LLC;

SECTION 1. Approval of the Asset Purchase Agreement. The *form, content, and provisions* of the Asset Purchase Agreement, as presented to this meeting of the Board of Commissioners of the County, *are in all particulars approved*, and the Mayor and the County Clerk are hereby authorized, empowered, and directed to execute, acknowledge, and deliver said Asset Purchase Agreement in the name, and on behalf, of the County.

SECTION 2. Approval of the Management Agreement. The form, content, and provisions of the Management Agreement, as presented to this meeting of the Board of Commissioners of the County, are in all particulars approved, and the Mayor and County Clerk are hereby authorized, empowered, and directed to execute, acknowledge, and deliver said Management Agreement in the name, and on behalf, of the County.

(Emphasis added).

Although this resolution shows that the Commissioners reviewed Houston County's agreements with PCMC and Acute Care and approved the agreements "in all particulars," Houston County insists the resolution merely approved "draft documents" that were missing a material term, the purchase price. However, the County's position is undermined by the clear directive, which authorized the Mayor and County Clerk of Houston County "to execute, acknowledge, and deliver" the agreements on behalf of the County.

Furthermore, Acute Care relies on an email from October 16, 2012, in which Ms. Barnett, attorney for Houston County, sent the asset purchase agreement, the management agreement, and the Commissioners' resolution to a USDA loan representative, writing:

Attached is a copy of the signed Resolution adopted by the Houston County Commission last night authorizing the execution of the Asset Purchase Agreement and the Management Agreement in connection with the Hospital purchase . . . Please let Markley or me know what else you need to process this for closing.

Then, on October 18, 2012, when the USDA representative noted that the asset purchase agreement did not have a purchase price, Ms. Barnett responded:

Yes, it is the parties' intentions that the USDA Loan be applied to retire all existing lien indebtedness (appearing on the title commitment), as well as to reimbursement of the management company, to the extent of payments advanced for accounts payable (with supporting documentation).

.   .   .

None of these numbers can be finalized until we set a firm closing/funding date. Then we can request a formal payoff letter.

In other words, **the Seller is expecting the purchase price to be equal to the amount necessary to pay the liabilities on the Seller's balance sheet. So yes, the purchase price will be that number**. Funds available for renovations to the hospital, and other reserved funds are not going to the Seller. **The Seller is not receiving any cash**.

(Emphasis added).

Acute Care insists this email proves that Houston County and PCMC had agreed upon the purchase price because they had agreed upon the method for calculating the purchase price and, thus, the county had an enforceable contract to purchase the hospital before the deadline expired. As we explained in previous cases, "where price is the unspecified material term, courts have enforced contracts that call for the price to be set by vague but ascertainable standards . . . ." *Abbott v. Abbott*, No. E2015-01233-COA-R3-CV, 2016 WL 3976760, at \*5 (Tenn. Ct. App. Jul. 20, 2016) (quoting *Huber v. Calloway*, No. M2005-00897-COA-R3-CV, 2007 WL 2089753, at \*5 (Tenn. Ct. App. Jul. 12, 2007)).

Considering the foregoing facts in a light most favorable to Acute Care, a reasonable finder of fact could infer that all material terms of the asset purchase agreement had been agreed upon as early as October 18, 2012. Therefore, the Mayor and County Clerk of Houston County could have proceeded "to execute, acknowledge, and deliver" the asset purchase agreement as previously authorized by the Board of Commissioners.

Acute Care also contends it was disputed as to **why** Houston County failed to sign the asset purchase agreement by December 31. Acute Care contended that Houston County acted in bad faith because its failure to sign the agreements was calculated to avoid its obligation to both reimburse Acute Care and award the management contract to Acute Care. Pursuant to the plain terms of the Letter of Intent, if the purchase of PCMC closed pursuant to the Letter of Intent, Houston County was required to lease the assets of PCMC to Acute Care—"As of the Closing, [Houston County] and [Acute Care] **shall** enter into a lease of the Assets . . . ." (Emphasis added). Ultimately, because the purchase

- 10 -

of the hospital did not close in accordance with the Letter of Intent, Houston County was free to award the management contract to a company owned by Houston County's attorneys, Tim Gary and John Griffin.

As evidence of the County's bad faith, Acute Care submitted an October 2012 email, redacted by Houston County, from Mr. Griffin to Mr. Gary stating: "Attached are both documents with updates. Let me know if you need to add anything else. If this looks like it is moving forward, I would like to get together and discuss the overall management company concept." When deposed, the Mayor of Houston County could not confirm or deny that Houston County had begun discussions with Mr. Griffin and Mr. Gary as early as October 2012 about forming a separate entity to manage PCMC:

Q. Did you have discussions with Mr. Griffin or Mr. Gary in or around October of 2012 about getting together with them to discuss the overall management-company concept?
A. I don't remember.
Q. Who is Mr. Gary?
A. Tim Gary was an attorney.
Q. He was your attorney?
A. He was an attorney for the county up at the hospital.
Q. After [Acute Care] is no longer involved in the particular transaction, did Mr. Griffin and Mr. Gary end up in—an entity they have ownership interest or control, operating the hospital?
A. The—I think that's what Franklin Management ended up being.

Considering the foregoing facts in a light most favorable to Acute Care, a reasonable finder of fact could infer that the October email represented the start of negotiations to award Franklin Healthcare Management, instead of Acute Care, the hospital management contract.

Based on the foregoing and other evidence in the record, there is a genuine dispute of material fact concerning whether Houston County acted in good faith in negotiating an asset purchase agreement with PCMC and in closing on the purchase of the hospital by the deadline, either by refraining from conduct that would prevent or hinder the occurrence of the condition precedent or by taking affirmative steps to cause its occurrence. Accordingly, Houston County was not entitled to summary judgment on the claim of breach of contract.[4]

---

[4] As an alternative theory, Houston County contends that as of December 18, 2012, Acute Care withdrew from the Letter of Intent and terminated all obligations therein, including Houston County's obligations to reimburse Acute Care. As evidence, Houston County submitted a letter written by Acute Care's CEO to Houston County's Mayor and Commissioners on December 18, 2012, in which, counsel

(continued…)

## II. UNJUST ENRICHMENT

The trial court summarily dismissed Acute Care's unjust enrichment claim on the basis that "a plaintiff cannot recover [on] an unjust enrichment claim where there is a valid contract, and it is undisputed that the [Letter of Intent] constituted a valid contract . . . ." Acute Care contends this was in error because whether the April 17, 2012 and July 6, 2012 amendments to the Letter of Intent are enforceable is disputed.

Our courts recognize two types of implied contracts—contracts implied in fact and contracts implied in law. *Freeman Indus., LLC v. Eastman Chem. Co*., 172 S.W.3d 512, 524 (Tenn. 2005). "Contracts implied in fact arise under circumstances establishing the parties' mutual intention to contract." *Id*. However, when there is no mutual intent to contract, a contract implied in law may arise under various quasi-contractual theories, including unjust enrichment. *Id*. at 524–25. Thus, a plaintiff "may assert a claim for unjust enrichment when the plaintiff does not have a contract with the defendant, or the contract that the plaintiff has with the defendant is not enforceable or invalid." *Advanced Sec. Servs. Evaluation & Training, LLC v. OHR Partners Ltd*., No. M2017-00249-COA-R3-CV, 2018 WL 1391626, at *11 (Tenn. Ct. App. Mar. 20, 2018) (citing *Freeman*, 172 S.W.3d at 524–25).[5]

Houston County conceded that the Letter of Intent was a valid contract and admitted that the amendments executed on April 17, 2012, and July 6, 2012, were "signed" by PCMC, Acute Care, and Houston County.[6] However, Houston County never

---

for Houston County insisted at oral argument that Acute Care formally withdrew from the agreement and released Houston County of its obligations to reimburse Acute Care. We disagree. We also find it significant that Acute Care assured Houston County in the December 18 correspondence that it wanted to participate in "a long-term solution" to ensure the viability of PCMC. Moreover, the following day, Sandra Adams, Vice President and General Counsel for Acute Care, sent an email to Houston County attorney Tim Gary stating: "Tim, I have still not heard from you on the management agreement. Could you please let me know the status?" Thus, we find no merit to the contention that, as of December 18, 2012, Acute Care withdrew from the Letter of Intent and terminated all obligations therein, including Houston County's obligations to reimburse Acute Care.

[5] To proceed under an unjust enrichment theory, the plaintiff must show: "1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Freeman*, 172 S.W.3d at 525 (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)).

[6] Houston County's statement of undisputed facts, reads:

> 12. PCMC, [Acute Care], and Houston County signed an amendment to the [Letter of Intent] dated April 17, 2012.

(continued…)

- 12 -

admitted or conceded that the amendments were valid and enforceable. Stated another way, the fact that it is undisputed the parties "signed" the amendments was not tantamount to admitting that the amendments were enforceable. Moreover, Houston County signed the April amendment "[a]s an acknowledgment only."

Whether the initial date or the date of December 31, 2012, constitutes the agreed-upon deadline for closing on the purchase of the hospital is dependent on whether both of the amendments are valid and enforceable. Therefore, there is a genuine dispute of a material fact which precludes a finding that an enforceable agreement exists. Because the trial court based its decision to summarily dismiss Acute Care's unjust enrichment claim on the determination that it was "undisputed that the [Letter of Intent] constituted a valid contract," we must reverse the dismissal of Acute Care's unjust enrichment claim.[7]

### IN CONCLUSION

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Houston County.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

14. PCMC, [Acute Care], and Houston County signed an amendment to the [Letter of Intent] dated July 6, 2012.

[7] Houston County also argues that Acute Care's unjust enrichment claim fails as a matter of law because it is undisputed that Acute Care conferred a direct benefit on PCMC, and not on Houston County. However, the Tennessee Supreme Court has held that "a plaintiff need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust." *Freeman*, 172 S.W.3d at 525 (emphasis in original). Therefore, the County's argument is without merit.