IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 4, 2020 Session

## GENERATION 4 RECYCLING GROUP, LLC v. TRIUMPH AEROSTRUCTURES, LLC - VOUGHT AIRCRAFT DIVISION

**Appeal from the Chancery Court for Davidson County**
**No. 17-836-IV      Russell T. Perkins, Chancellor**

### No. M2019-01668-COA-R3-CV

This is an action for breach of contract and unjust enrichment that arises from an alleged breach of confidentiality during a Request for Proposals ("RFP") process. The RFP contained a confidentiality provision stating that the defendant would "maintain strict confidentiality of all information provided in response to this RFP." The plaintiff submitted the lowest bid, but after two requests for revised proposals, which the plaintiff declined to provide, the defendant awarded the contract to another business. In its complaint, the plaintiff claimed that the defendant revealed information about the plaintiff's proposal to the other bidders in violation of the confidentiality provision to encourage them to lower their bids and, as a consequence, the plaintiff sustained damages. Specifically, the plaintiff alleged the defendant disclosed to the other bidders that they were not the lowest bidder and the percentage by which their bids exceeded the average bid. Following discovery, the trial court summarily dismissed all claims. This appeal followed. We affirm the trial court's dismissal of the unjust enrichment claim on the ground that there was a valid contract. We also affirm the dismissal of the breach of contract claim on the ground that there was no evidence to support the plaintiff's contention that the defendant breached the agreement or that the alleged breach caused the plaintiff to sustain damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which W. NEAL MCBRAYER, J., joined. RICHARD H. DINKINS, J., not participating.

Randall K. Winton, Brentwood, Tennessee, for the appellant, Generation 4 Recycling Group, LLC.

John Lee Farringer, IV and Christina R.B. López, Nashville, Tennessee, for the appellee, Triumph Aerostructures, LLC – Vought Aircraft Division.

## OPINION

The defendant, Triumph Aerostructures, LLC ("Triumph"), is an aerostructures manufacturing company with a facility located in Nashville, Tennessee. On October 2, 2015, Triumph issued an RFP for a scrap metal recycling contract for the Nashville facility. The stated objective of the RFP was, *inter alia*, "to request your best offer to supply the specific business requirements outlined in Section 4.0 of this document."

Triumph sent the RFP to eight businesses and requested that they include within their proposals a capital investment of $2.8 million to purchase five vacuum machines to replace old and outdated equipment at Triumph's facility. Only three of the businesses submitted proposals— (1) Generation 4 Recycling, LLC ("Generation 4"); (2) Shapiro Metals ("Shapiro"); and (3) Northeast Georgia Recycling, Inc. ("NE Georgia").

The RFP provisions that are most pertinent to the issues on appeal appear in paragraphs 8 and 9. The confidentiality provision set forth in paragraph 8 of the RFP reads:

> TRIUMPH expects the Supplier to respect the confidentiality of this information. The Supplier shall treat this information as confidential and shall not disclose it to a third party without prior authorization by TRIUMPH.

> TRIUMPH will maintain strict confidentiality of all information that you provide in response to this RFP. TRIUMPH will not disclose information concerning your response to this RFP to anyone, other than those employed or so designated, by TRIUMPH directly involved in reviewing your response.

Paragraph 9, which is titled, "Terms of Bid," states:

> Expenses relating to the preparation of the proposal are entirely the responsibility of your company. . . . This RFP is not an offer to enter into an agreement with any Supplier. This is simply a request to receive proposals from Suppliers interested in supplying these products to TRIUMPH. We reserve the right to accept or reject any proposal and to enter into negotiations with any party to provide these services. All proposals shall become the property of TRIUMPH even if rejected.

After receiving the initial proposals from Generation 4, Shapiro, and NE Georgia, Triumph determined that the $2.8 million capital investment for new equipment resulted in fees that were too high. Consequently, Triumph instructed the businesses to submit alternative proposals to purchase two vacuums at a cost of $1.2 million instead of five vacuums at a cost of $2.8 million. All three businesses submitted revised proposals. While

Generation 4's proposal was the lowest, none of the bidders knew which or how many businesses had submitted proposals or the terms or pricing of the competing proposals.

On December 11, 2015, Brooke Kepley, the purchasing manager for Triumph, sent an email to Jeffrey Jiampietro, Generation 4's managing member, requesting additional pricing information from Generation 4. Mr. Jiampietro responded on December 13 by informing Ms. Kepley that the proposal process "was very time consuming," and he could not "devote anymore time quoting" unless he was awarded the contract. Moreover, Mr. Jiampietro said he would require Triumph to meet six conditions, which he listed in his email, if Generation 4 were awarded the contract.

On December 15, 2015, Ms. Kepley emailed the other two businesses—NE Georgia and Shapiro—to notify them of the percentage by which their proposals exceeded the average of all proposals. She did not, however, disclose the number of businesses that submitted proposals or the specific pricing of any proposal. The email to Shapiro stated, in pertinent part:

> Upon review of all supplier proposals, and comparing on a [sic] apples to apples basis, both Shapiro's proposals for scrap management cost (2.8M and 1.2M, at 500K lb/mo) are between 25-30% hire [sic] than the average of all quotations. . . .

Ms. Kepley's email to NE Georgia stated, in pertinent part:

> Upon review of all supplier proposals, and comparing on a [sic] apples to apples basis, both NE Gas proposals for scrap management cost (2.8M and 1.2M at 500K lb/mo) are between 5-10% higher than the average of all quotations. This means you are not the lowest, but you are also not the highest priced proposal. . . .

After Ms. Kepley sent the emails, NE Georgia and Shapiro participated in two additional rounds of negotiations and proposal submissions. On January 18, 2016, Triumph awarded the recycling contract to NE Georgia.

In a letter to Generation 4 on January 21, 2016, Ms. Kepley informed Mr. Jiampietro that Triumph did not award the contract to Generation 4 because Mr. Jiampietro refused to provide the additional pricing information she requested on December 11, 2015, and the conditions Generation 4 added to its proposal rendered it "less favorable."

On August 9, 2017, Generation 4 commenced this action in Davidson County Chancery Court for breach of contract only. Generation 4 alleged that Triumph revealed

information about Generation 4's proposal to the other bidders in violation of an oral[1] and written confidentiality agreement to persuade the other bidders to lower their bids.[2] Triumph filed an answer denying the existence of an oral confidentiality agreement and denying any breach of the written confidentiality agreement. After conducting discovery, Triumph filed a motion for summary judgment.

While Triumph's motion for summary judgment was pending, Generation 4 filed its Third Amended Complaint, removing its claim for breach of an oral confidentiality agreement and adding a claim for unjust enrichment. In its claim for breach of a written agreement, Generation 4 alleged that Triumph violated the written confidentiality provision by, *inter alia*, disclosing to each bidder that its bid was not the lowest bid and the percentage by which each respective bid exceeded the lowest bid. Generation 4 claimed, generally, that it "has suffered damages from [Triumph's] failure to maintain confidentiality of the information contained in the Plaintiff's response to the RFP."

As for Generation 4's unjust enrichment claim, it alleged that Triumph benefited from disclosing confidential information about Generation 4's proposal by obtaining lower bids from the other bidders. Thus, it "would be inequitable to permit the Defendant to retain the benefits it received from the improper use of the information contained in the Plaintiff's response to the RFP without payment." Triumph filed an amended answer denying liability on either claim.

The court held a hearing on Triumph's motion for summary judgment on April 26, 2019, and in an order entered on April 29, 2019, denied Triumph's motion for summary judgment. The court found that genuine issues of material fact existed on the elements of both claims in the Third Amended Complaint.

On July 19, 2019, Generation 4 filed a motion for partial summary judgment on its breach of contract claim. To support its motion, Generation 4 relied on the December 15 emails that Ms. Kepley sent to the representatives of Shapiro and NE Georgia, informing them of the percentage by which their bids exceeded the average of all bids. Generation 4 claimed that it was "evident" from the emails that Triumph used confidential information from Generation 4's proposal "to induce Shapiro and NE Georgia to lower their respective [bids]." Generation 4 claimed that it was undisputed that, thereafter, Triumph permitted Shapiro and NE Georgia to submit additional proposals.

To support its motion, Generation 4 included the affidavit of Mr. Jiampietro, which stated that "significant time and expense were required of [Generation 4] to respond to the

---

[1] Generation 4 alleged that it met with employees of Triumph in person wherein Triumph orally promised to keep the information in Generation 4's proposal confidential.

[2] Generation 4 filed an amended complaint to which it attached the RFP as an exhibit.

RFP." And Generation 4 "would not have spent such time, and incurred such expense, if [Triumph] was not required to keep confidential Plaintiff's, and the other parties', response to the RFP and be restricted from informing parties responding to the RFP whether they were the low bidder and providing them with an opportunity to lower their bids."

In response to Generation 4's motion for partial summary judgment, Triumph argued:

> There is no allegation, much less proof, that Triumph disclosed Generation 4's specific proposal or specific pricing to any other bidder [in violation of the confidentiality provision]. Instead, Generation 4's motion (and entire case) is solely based on the position that Triumph told the **average** of all bids (without even disclosing how many bidders there were) to bidders and that somehow was a violation of the non-disclosure provision.

(Emphasis in original). Triumph contended that, even if it breached the agreement, Generation 4 could not "demonstrate any recoverable damages caused by the alleged breach and thus cannot prove an element of the breach of written agreement cause of action."

Triumph then filed its second motion for summary judgment. It argued that Generation 4's unjust enrichment claim failed as a matter of law because neither party disputed the existence of a valid and enforceable contract. As for Generation 4's breach of contract claim, Triumph argued that it also failed because Generation 4 could not prove that it suffered any recoverable damages as a result of the alleged breach. Specifically, Triumph contended that the expenses related to the preparation of Generation 4's proposal were incurred prior to the alleged improper disclosures and not as a result of the disclosures. Moreover, it contended the RFP precluded the recovery of such damages by providing that "[e]xpenses related to the preparation of the proposal are entirely the responsibility of your company." And finally, Triumph relied on Ms. Kepley's deposition testimony and the bid analysis prepared by her to support its assertion that the winning bidder's price did not change after the alleged improper disclosures on December 15.

In Generation 4's response to Triumph's motion, it relied on the bid analysis prepared by Ms. Kepley to support the opposite contention—that NE Georgia lowered its bid in response to the improper disclosures. Generation 4 argued that, as a result, it incurred damages related to the cost of preparing its proposal and the loss of the recycling contract.

The court heard the motions for summary judgment on August 30, 2019, and entered an order on September 3, 2019, denying Generation 4's motion for partial summary judgment and granting Triumph's motion. The court determined that "there is a valid written contract between the parties in the form of the RFP issued by Triumph and accepted by Generation 4 when it submitted a proposal." The court found that "triable issues remain

on whether Generation 4's bid and other proprietary information were disclosed in violation of the Confidentiality Provisions of the RFP." Nevertheless, the court found that Generation 4 could not prove causation with respect to its alleged damages:

> On December 13, 2015, prior to the December 15 Emails, Generation 4 communicated to Triumph that it could not devote any more time to the RFP process unless it was awarded the contract. As such, Generation 4's alleged damages were incurred prior to any alleged breach and thus cannot be consequential damages arising from any alleged breach. Furthermore, the damages Generation 4 claims were caused by the alleged breach are for its expenses related to preparing its response to the RFP. However, the RFP states: "Expenses related to the preparation of the proposal are entirely the responsibility of your company." Hence, the damages sought by Generation 4 are precluded by the parties' contract. . . .
>
> The undisputed material facts show that the winning bidder did not change its pricing or cost amount after December 9, 2015. Thus, the December 15 Emails did not cause Generation 4 to lose the bid or otherwise suffer damages.

As for Generation 4's unjust enrichment claim, the court ruled that, because a valid contract existed between the parties, the unjust enrichment claim failed as a matter of law. Nevertheless, the court determined:

> Generation 4 has not demonstrated any damages caused by the alleged disclosure nor has it demonstrated any benefit to Triumph. The winning bidder never changed its pricing nor cost amount between December 9, 2015 and the date of the final contract. Generation 4, therefore, cannot prove that the alleged disclosures in the December 15 Emails led to any benefit (such as a lower contract price) for Triumph.

Thus, on that basis, the court summarily dismissed Generation 4's claims for breach of contract and unjust enrichment.

This appeal followed.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence

in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

To satisfy the requirements of Rule 56 when the moving party bears the burden of proof, as is the case here, "that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC,* 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).

## ANALYSIS

Generation 4 asks us to consider whether the trial court erred by denying its motion for partial summary judgment and by summarily dismissing its unjust enrichment and breach of contract claims. We will first consider the claim of unjust enrichment.

### I. UNJUST ENRICHMENT

As a threshold requirement of an unjust enrichment claim, there can be no valid contract between the parties. *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524–25 (Tenn. 2005). The trial court summarily dismissed Generation 4's claim for unjust enrichment upon the determination that the parties entered into an enforceable contract "in the form of the RFP issued by Triumph and accepted by Generation 4 when it submitted a proposal."

Generation 4 contends this was error because the RFP explicitly provides that it "is not an offer to enter into an agreement with any Supplier." For its part, Triumph argues that a valid contract existed between the parties because both parties conceded that it did—Generation 4, through its motion for partial summary judgment, and Triumph, through its response.

Contract formation is a question of law that this court reviews de novo. *ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011). Accordingly, we must determine if the confidentiality provision set forth in the RFP meets the legal requirements for an enforceable contract. *Id*.

An enforceable contract exits when there is "a meeting of the minds of the parties in mutual assent to the terms," and it is "based upon a sufficient consideration," *Johnson v. Cent. Nat. Ins. Co. of Omaha, Neb.*, 356 S.W.2d 277, 281 (Tenn. 1962), in the form of mutual promises. *Bratton v. Bratton*, 136 S.W.3d 595, 602 (Tenn. 2004). "The legal mechanism by which parties show their assent to be bound is through offer and acceptance." *Moody Realty Co. v. Huestis*, 237 S.W.3d 666, 675 n.8 (Tenn. Ct. App. 2007). That said, the "test for an offer is whether it induces a reasonable belief in the recipient that the recipient can, by accepting it, bind the sender." 17 C.J.S. Contracts § 53.

Triumph's RFP contained an offer to each prospective supplier—one that each prospective supplier could accept by presenting a proposal, or reject by not submitting a proposal. The offer included a promise that Triumph would "maintain strict confidentiality of all information that [potential suppliers] provide in response to this RFP." Correspondingly, by submitting a proposal, the supplier accepted, *inter alia*, the obligation not to disclose Triumph's information to a third party without prior authorization. Thus, when Generation 4 submitted its proposal to Triumph in response to the RFP, it "accepted" Triumph's "offer." As a consequence, Generation 4 and Triumph entered into a valid confidentiality agreement.

We acknowledge, as Generation 4 asserts, that paragraph 9 of the RFP states, in pertinent part, "This RFP is not an offer to enter into an agreement with any Supplier." However, this provision is limited to the expressed intent of forging a scrap metal recycling contract with one of the suppliers. The entire paragraph reads:

9.0 Terms of Bid.

Expenses relating to the preparation of the proposal are entirely the responsibility of your company. The terms of your bid proposal shall be valid for 120 days after proposal submission. This RFP is not an offer to enter into an agreement with any Supplier. This is simply a request to receive proposals from Suppliers interested in supplying these products to TRIUMPH. We reserve the right to accept or reject any proposal and to enter into negotiations

with any party to provide these services. All proposals shall become the property of TRIUMPH even if rejected.

As paragraph 9 reveals, the statement upon which Generation 4 relies is sandwiched between other "agreements" the parties entered into when Generation 4 submitted a proposal in response to the RFP. For example, by submitting its proposal, Generation 4 agreed that the "[e]xpenses relating to the preparation of the proposal are entirely the responsibility of [Generation 4]." It also agreed that Triumph "reserve[d] the right to accept or reject [Generation 4's] proposal and to enter into negotiations with any party to provide these services." Furthermore, by submitting its proposal, Generation 4 agreed that its proposal "shall become the property of TRIUMPH even if rejected." For these obvious reasons, paragraph 9 did not bar the parties from entering into an agreement to be bound by the confidentiality provision set forth in paragraph 8.

Because we have determined that there was a valid contract between the parties to maintain the confidentiality of information provided during the proposal process, Generation 4's unjust enrichment claim fails as a matter of law. *See Freeman Indus., LLC.*, 172 S.W.3d at 524–25. Accordingly, we affirm the summary dismissal of Generation 4's unjust enrichment claim.[3]

Having determined that the parties entered into an enforceable confidentiality agreement, we next address the breach of contract claim.

## II. BREACH OF CONTRACT

Generation 4 contends that Triumph breached the confidentiality agreement by disclosing to the other bidders that they were not the lowest bidder and the percentage by which their bids exceeded the average bid. Generation 4 further contends that the breach caused it to sustain damages when NE Georgia allegedly lowered its bid in response to the alleged improper disclosures.

"The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3)

---

[3] Furthermore, even if we determined that there was no enforceable contract between the parties, to establish an unjust enrichment claim, the plaintiff must prove that (1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) it would be inequitable for the defendant to retain the benefit without payment to the plaintiff. *Freeman Indus., LLC*, 172 S.W.3d at 525. As we will explain in the ensuing analysis, there is no evidence in the record to support a finding that Triumph disclosed confidential information about Generation 4's proposal to the other bidders, or that NE Georgia lowered its bid as a result of the alleged disclosures. Therefore, Generation 4 has no evidence to prove that Triumph appreciated or retained any benefit conferred on it by Generation 4.

damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citations omitted).

The confidentiality agreement provides, in pertinent part, "TRIUMPH will maintain strict confidentiality of all information that you provide in response to this RFP." Generation 4 contends that this court must construe the term, "information," broadly to mean that Triumph was prohibited from revealing any information that could be derived from Generation 4's proposal. Specifically, it contends Triumph breached the confidentiality agreement by revealing to the other bidders that they were not the lowest bidder.

In Tennessee, contract interpretation is more nuanced than the extreme textualist approach that Generation 4 urges this court to follow. *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019) ("Tennessee's jurisprudence on contract interpretation 'evades tidy classification as textualist or contextualist.'" (quoting Lawrence A. Cunningham, *Contract Interpretation 2.0: Not Winner-Take-All but Best-Tool-For-The-Job*, 85 Geo. Wash. L. Rev. 1625, 1627 (2017))). While "the words expressing the parties' intentions should be given their usual, natural and ordinary meaning," *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. Ct. App. 1985), "the meaning of contractual terms 'can almost never be plain except in a context.'" *Individual Healthcare Specialists*, 566 S.W.3d at 686 (quoting Restatement (Second) of Contracts § 212 cmt b). For that reason, we must construe the contract "with reference to the situation of the parties, the business to which the contract relates and the subject matter as appears from the words used." *Id*. at 694 (quoting *Petty v. Sloan*, 277 S.W.2d 355, 359 (Tenn. 1955)).

The RFP expressly states that the objective of the process is to obtain the "best offer" from the various suppliers. It further states that Triumph "reserve[s] the right to accept or reject any proposal **and to enter into negotiations with any party** to provide these services." (Emphasis added). Considering that the RFP process was a competition between potential suppliers for a recycling contract, we do not interpret the confidentiality agreement as prohibiting Triumph from informing the other businesses that their proposals were not the lowest and that their proposals were a certain percentage over "the average" of all proposals in order to foster competition and to obtain the best offer from the competing suppliers.

That said, Generation 4 also claims that the December 15 emails impermissibly disclosed the amount of Generation 4's bid. But we need not determine whether such a disclosure constituted a breach of the confidentiality agreement. This is because Ms. Kepley gave the percentage by which each bid exceeded the ***average*** of all bids, not the percentage by which each bid exceeded the ***lowest*** bid. As such, it would be impossible for NE Georgia or Shapiro to calculate the lowest bid, i.e., Generation 4's bid, without knowing how many bids were placed ***and*** the range of difference in the value of those bids.

- 10 -

Generation 4 does not cite to any evidence in the record to support a finding that the other bidders knew the number of bidders or the range in difference in the value of the bids. Therefore, Generation 4's claim for breach of contract fails as a matter of law.

The foregoing notwithstanding, even if Triumph breached the agreement, there is no evidence in the record to support a finding that Generation 4 suffered damages as a result of the alleged breach. Generation 4's claim for damages hinges on the contention that NE Georgia lowered its bid in response to the alleged improper disclosures. But Ms. Kepley testified at her deposition that NE Georgia's bid did not change after she sent the December 15 emails. And the bid analysis and summary prepared by Ms. Kepley, and submitted with Triumph's summary judgment motion, supported Ms. Kepley's deposition testimony. It showed that NE Georgia's bid remained the same from the second round of bidding, which took place just prior to the December 15 emails, to the fourth and final round of bidding, which occurred after the December 15 emails. Accordingly, the undisputed facts do not support Generation 4's claim that the breach caused it to suffer damages.

Therefore, we affirm the trial court's decision to summarily dismiss Generation 4's breach of contract claim.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Generation 4 Recycling, LLC.

_____
FRANK G. CLEMENT JR., P.J., M.S.