IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 14, 2023 Session

**ANDERSON POURED WALLS, INC. v. GILBERT CLARK, ET AL.**

**Appeal from the Chancery Court for Sevier County**
**No. 19-5-115 Telford E. Forgety, Jr., Chancellor**

_____

**No. E2022-01271-COA-R3-CV**
_____

This appeal concerns a subcontractor's claims for non-payment. The trial court dismissed the claim for unjust enrichment against defendant Clark, the home owner, as not ripe because the plaintiff subcontractor had not exhausted its remedies against the party with whom it had contracted. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

J. Ford Little, Knoxville, Tennessee, for the appellant, Anderson Poured Walls, Inc.

Donald K. Vowell and William E. Duffey, Jr., Knoxville, Tennessee, for the appellee, Gilbert Clark.

Matthew Lipham, Munford, Alabama, *pro se*.

**OPINION**

**I. BACKGROUND**

In 2017, Gilbert Clark contracted with Matthew Lipham, an unlicensed contractor,[1] to construct a new log home on Clark's property in Sevier County. In early 2018, Lipham approached Anderson Poured Walls, Inc. ("APW"), a small Hamblen County-based concrete subcontractor, to provide the labor and materials for the concrete foundation, footer, walls, and slab for Clark's home. APW's work was completed in April 2018 in a

---

[1] Purportedly Lipham was working under his father's license.

manner satisfactory to both Lipham and Clark.

Clark testified at trial that the contract he had with Lipham was a "progressive draw" agreement; if one of the "progress payments was missed," Lipham could "suspend work on the job until such time as all payments due have been made." The agreement also provided that in the event Clark failed to make a payment due, Lipham "may cease work without breach pending payment or resolution of any dispute." The procedure for making payments to Lipham was that BB&T, the construction lender, would order an inspection and, if the inspection merited approval, would put the money in Clark's account for Clark to make the progress payment to Lipham either by wire or check. Clark testified that although he tried to visit the jobsite weekly, sometimes he would go a couple of weeks without a visit because he lived four hours away. Thus, he relied on the bank's inspector to oversee the job and approve the progress payments. With the exception of one occasion when he submitted an application for payment to Clark, Lipham submitted his pay applications "straight to the Bank."

Clark testified that he received from the bank a "big chunk of money to be able to pay for the basement" on April 19, 2018. This "big chunk of money"—$62,349.40—was paid the day before APW's last day of work on April 20. According to Clark, at the time of this payment, the foundation/basement was all that had been built; he believed it was the only thing that he could have been paying for. As Clark explained, "That's the only thing done at the time. That's the only thing we had to be paid at the time was that basement." Lipham submitted his application for payment for the construction of the foundation/basement "straight to the Bank" rather than to Clark.

On May 15, 2018, APW generated an invoice in the amount of $61,026, but was unable to send it because it lacked a mailing address or email contact for Lipham.[2] The invoice amount—$61,026—closely approximated the $62,349.40 that Clark claims was paid out of his construction loan just a few weeks before. APW had no formal contract with Lipham; their agreement is reflected by "[t]he comments in [a] text thread." The record reveals that Cary Anderson, the owner and president of APW, and Lipham texted each other for several months thereafter without mentioning any balance due.[3]

Around the first of August 2018, Anderson contacted Clark by phone to tell him that the concrete bill with APW had not been paid; Anderson stated: "I would appreciate it if you would not pay them [Lipham] any more money until you make sure that I was paid." Clark informed Anderson that he believed he had already paid for the work on the basement. Anderson told Clark: "Don't pay them another dime until they pay me." Clark thereafter called Lipham, who told him that he had already "paid the basement." Lipham

---

[2] The building permit for the project lists an address for Matthew Lipham as "PO Box 6035 Sevierville TN 37862."

[3] The message exchange ended on October 13, 2018.

"got angry [with Clark] and said, you'd better pay [Lipham] or you're going to have a problem." Clark testified that he "continued to pay the bills all the way to the end" because "Mr. Lipham would have walked off the job." Clark called Anderson back and related that "the Liphams said that they had already paid." Clark claims that he "hounded" Lipham for proof that he had paid APW, and Lipham told him that he would have his attorney contact him. Clark then received a letter from Lipham's attorney dated January 9, 2019, stating, among other things, that "Creekside Log Homes was the company that contracted with Anderson Poured Walls and therefore, it is Creekside's responsibility for any discrepancies that Anderson Poured Walls may claim, not the homeowner." Lipham never provided Clark with proof through documentation of payment for the work by APW.

A Notice of Completion was filed for the home on May 17, 2019. All of the subcontractors, with the exception of APW, were paid in full, and no liens were filed. When Clark closed his construction loan, he, Lipham, and the bank executed a "Request and Certification for Payment," which included a description of the various items of construction, an estimated percentage of the job for each and an "Original" or "original estimate[d]" dollar value for each item, with a total "Cost of Construction" of $381,910, which was "the amount budgeted to build the house." The loan was 100% paid, with all of the funds that Clark borrowed for the job being paid to Lipham. Clark subsequently sold the house for $1,500,000.

On May 29, 2019, APW filed this lawsuit alleging unjust enrichment, among other claims, against Clark, Lipham and Newell Homes, LLC ("Newell"). The complaint alleged that Lipham and Newell built the home in a joint venture and that "Newell is vicariously liable for the actions of Lipham." Lipham failed to appear to defend the action; default judgment was entered against him on December 7, 2020. APW and Newell entered into a "Confidential Settlement Agreement," and an order was entered dismissing Newell *with prejudice* on November 9, 2021.

After a hearing on October 14, 2021, a Special Master held on December 30, 2021, in part:

(1) "[A]ll of the elements" of a claim of unjust enrichment under Tennessee law had been satisfied;

(2) "There is no question that [APW] provided services that benefited Clark's property …;"

(3) "Essentially, the dispute between [APW] and Clark comes down to a question of whether it would be unjust to allow Clark to retain the benefit of [APW]'s work without paying for same …;"

(4) "There is authority for the proposition that if a landowner (here Clark)

- 3 -

has paid for the services/material for which compensation is sought, even though the provider did not receive those payments, the landowner is not unjustly enriched by retaining the benefit of those services. (*See e.g., Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150 (1966)). **Inasmuch as the undersigned has found that there was no admissible evidence of payments by Clark for the services provided by [APW], Clark is not entitled to credit for any such payments** …;" and

(5) "The Special Master finds that [APW] is entitled to recover from Clark the amount of [APW]'s invoice ($61,026) plus prejudgment interest at the rate of 6.5% beginning May 15, 2018 until date of the pronouncement of any judgment against Clark. This amount shall be reduced by the amount of the settlement between [APW] and Newell."

(Emphasis added).

On August 15, 2022, reviewing the report of the Special Master, the trial court found in favor of APW on several key issues, including: (1) Judgment was entered in favor of APW against Lipham in the total amount of $199,846.77; (ii) Judgment was entered in favor of APW against Lipham for attorney's fees and expenses in the amount of $44,664.05; and (iii) Judgment was entered in favor of APW against Lipham for continuing interest on the judgment. However, the trial court entered a one-sentence rejection of the Special Master's conclusion on the unjust enrichment claim against Clark and dismissed it *without prejudice*; it found that APW failed to exhaust its remedies against Lipham and, therefore, the claim against Clark was "not ripe." The Special Master's report was only adopted "to the extent set forth herein."

## II. ISSUE

We restate the issue raised by APW on appeal as follows:

Whether the trial court erred in dismissing APW's claim for unjust enrichment against Clark because APW allegedly failed to exhaust its remedies against Lipham and the case is not ripe.

## III. STANDARD OF REVIEW

The standard of review is de novo with a presumption of correctness as to the trial court's findings of fact unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

# IV. DISCUSSION

Our highest court has held that unpaid subcontractors can submit an unjust enrichment claim against a property owner. *Paschall's Inc.*, 407 S.W.2d at 155. That right, however, is conditioned on the claimant demonstrating that it has exhausted its remedies against the contractor with whom it enjoyed privity of contract. *Id.*

The exhaustion of remedies requirement "is a judge-made doctrine whose purpose is to winnow out claims that are not ripe for adjudication." *Window Gallery of Knoxville v. Davis*, No. 03A01-9906-CH-002255, 1999 WL 1068730, at *3 (Tenn. Ct. App. Nov. 24, 1999) (citation and quotation omitted). As noted in *Window Gallery*, determining whether a controversy is ripe enough to be justiciable involves a two-part inquiry. First, the court must determine "whether the issues are of the type that would be appropriate for judicial determination. Then the court must consider the hardship that declining to consider the case will have on the parties." *Id.* Courts decline to act in matters where there is no need to act or where the refusal to act will not prevent the parties from raising the issue at a more appropriate time. *Id.* Whether a claimant has exhausted its remedies "so as to allow it to pursue an unjust enrichment claim … must be determined by the facts of each individual case." *Id.*

In this case, APW obtained a default judgment against Lipham for $61,026, trebled to $183,078, but it offered nothing to demonstrate that Lipham was judgment-proof. Anderson related that he had "tried for a very long time to collect my money and then on top of that in doing so, I've learned the knowledge that [Lipham] has several complaints against him from people that he owes money." Anderson opined: "I do not expect to get any of it." According to Clark, Anderson's "bare allegation" is insufficient to establish exhaustion of remedies.

APW asserts that the question of ripeness was not raised until well over three years into litigation and that the trial court's dismissal is directly opposed to the fact and law-based findings of the Special Master, who determined that "there was no admissible evidence of payments by Clark for the services provided by APW, [and that] Clark is not entitled to credit for any such payments." It contends that the judgment dismissing its claim of unjust enrichment against Clark incorrectly prolongs this matter by requiring refiling after a nearly four-year, fully completed litigation process. APW argues that requiring refiling of the case would be a waste of judicial resources, efficiency, and economies. According to APW, Lipham never answered, appeared, or participated in this case resulting in a default judgment, which should serve as sufficient evidence of APW's efforts to exhaust its remedies against Lipham. According to APW: "[A] judgment by default is a final order disposing of a case on its merits, like any other judgment." *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984). Thus, APW asserts, the remedies against Lipham, as general contractor in privity of contract, have been exhausted by the December 2020 default judgment, and a claim of unjust enrichment against Clark, as homeowner, was ripe.

APW further notes that at no time did Clark file a dispositive motion in this case attacking the issues of exhaustion of remedies or the ripeness of APW's claim against Clark.

We recognize APW's frustration in this matter but find we must agree with the trial court that only obtaining a default judgment against Lipham without providing proof of the inability to collect upon it is insufficient to establish exhaustion of remedies. As we recognized in *Window Gallery*, a plaintiff is required to have "taken some steps to attempt recovery from [the contractor with whom they enjoyed privity of contract], [and, until then,] it has not exhausted its remedies against [that party]." 1999 WL 1068730, at *4. Likewise, as the Tennessee Supreme Court observed in *Freeman Industries, LLC v. Eastman Chemical Company*, 172 S.W.3d 512 (Tenn. 2005):

> We do not believe, however, that a bare allegation [by plaintiff] that any attempt to exhaust its remedies against [defendant] would be futile without providing a factual basis to support the allegation is sufficient to establish a disputed issue of material fact as to the exhaustion-of-remedies element of [plaintiff]'s unjust enrichment claim against the defendants.

*Freeman*, 172 S.W.3d at 526. "[U]ntil such time as [a plaintiff] receives a judgment against [a contractor] and ***is unable to collect upon it***," the unjust enrichment cause of action is premature. *AmSouth Erectors, LLC v. Skaggs Iron Works, Inc.*, No. W2002-01944-COA-R3-CV, 2003 WL 21878540, at *6 (Tenn. Ct. App. Aug. 5, 2003) (emphasis added). Accordingly, we must affirm the decision of the trial court as to the ripeness of the claim against Clark.

## V. CONCLUSION

The judgment of the trial court is affirmed and remanded. The costs on appeal are assessed against Anderson Poured Walls, Inc.

_____
JOHN W. MCCLARTY, JUDGE