IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2024 Session

## JIM SPANGLER ET AL. v. MACK MCCLUNG

**Appeal from the Chancery Court for Davidson County**
**No. 21-0203-II      Anne C. Martin, Chancellor**

—————————————————————

## No. M2024-00055-COA-R3-CV

—————————————————————

At issue in this appeal are claims for unjust enrichment and breach of a limited liability company's operating agreement. The plaintiff, individually and on behalf of the LLC, filed the complaint against his business partner. The complaint alleged that the defendant breached the LLC's operating agreement by executing a promissory note to satisfy a foreclosure deficiency and by securing that note with a deed of trust on the LLC's remaining real estate. After a bench trial, the court dismissed the plaintiff's claims with prejudice. The court found that the promissory note was an extension or renewal of the LLC's existing loan and that the defendant's actions were authorized by a "written consent," which allowed the defendant "to do any acts, including but not limited to the assignment, delivery, pledge, or hypothecation . . . of any or all assets of this LLC to secure such Loan, renewals and extensions." Thus, the court concluded that the defendant did not breach the operating agreement. And because the parties had a valid and enforceable contract, the court determined that the plaintiff had no claim for unjust enrichment. But the court denied the defendant's request for an award of attorney's fees under the operating agreement's fee-shifting provision. The court reasoned that the action was not "to secure enforcement" of the operating agreement, as required by the operating agreement. We affirm the court's judgment on the plaintiff's claims, albeit for different reasons with respect to the unjust enrichment claim but reverse the trial court's denial of the defendant's request for attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part.**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and THOMAS R. FRIERSON II, JJ., joined.

J. Ross Pepper, George M. Johnson, and Daniel P. Whitaker, III, Nashville, Tennessee, for the appellant, Mack McClung.

Todd E. Panther, Mark Alexander Carver, and Hunter Coleman Branstetter, Nashville, Tennessee, for the appellee, Jim Spangler, individually and on behalf of Flintlock Investors, LLC.

## OPINION

### FACTS AND PROCEDURAL HISTORY

In 2011, Jim Spangler ("Plaintiff") and Mack McClung ("Defendant") formed Flintlock Investors, LLC, to develop real estate in the Nashville, Tennessee area.

Flintlock's operating agreement ("the Operating Agreement") stated that Plaintiff and Defendant were equal partners with shared authority to act on the company's behalf in the normal course of business. But neither party could incur "any indebtedness secured by assets of the Company" without approval by the other.

Flintlock owned two parcels of land, both conveyed by Defendant. As his initial contribution to the LLC, Defendant conveyed an unencumbered parcel in the Nashboro Village subdivision in Nashville, Tennessee ("the Nashboro Realty"). A few months later, in September 2011, Defendant conveyed a second parcel in Sumner County, Tennessee ("the Sumner Realty"). In consideration, Flintlock agreed to assume a $1 million loan ("the Loan") from InSouth Bank,[1] which was secured by a deed of trust on the Sumner Realty and personally guaranteed by Defendant. Plaintiff consented to the transaction and executed the Assumption Agreement on Flintlock's behalf.

Plaintiff and Defendant contemporaneously executed a document entitled Written Consent to Action of the Members of Flintlock Investors, LLC ("the Written Consent"). The Written Consent authorized Defendant to, *inter alia*, execute "documents to amend, modify, extend and renew the Loan" and to "do any acts, including but not limited to the assignment, delivery, pledge, or hypothecation from time to time with Lender of any or all assets of [Flintlock] to secure such Loan, renewals and extensions."

When Flintlock assumed the Loan, it had a maturity date of September 15, 2012. Flintlock, however, was unable to satisfy the Loan by that date. Thus, in December 2012, Defendant—acting pursuant to his authority under the Written Consent—executed a modification and extension agreement with a new maturity date of January 15, 2023.

Still, Flintlock was unable to make payment. Thus, in April 2023, InSouth sold the Sumner Realty to satisfy the Loan's unpaid principal, interest, and fees. The foreclosure

---

[1] The Sumner Realty was held and conveyed by another of Defendant's companies, Gallardia Properties, LLC.

proceeds, however, were considerably less than the remaining balance and left a deficiency of $468,786.62.

After the foreclosure sale, Defendant—who was personally liable for the Loan under his guaranty—began negotiations to avoid a deficiency judgment. Plaintiff took part in the initial conversations but ultimately left the matter in Defendant's hands. By that time, Plaintiff and Defendant were no longer on good terms, and Plaintiff believed that the deficiency was Defendant's responsibility under his personal guaranty.

Two years and three months later, in July 2015, Defendant executed an Amended and Restated Promissory Note ("the Amended Note") that extended the Loan's maturity date to July 1, 2018. But because the Sumner Realty had been sold, InSouth required Flintlock to provide new collateral to secure the Loan. Thus, Defendant also executed a deed of trust on the LLC's sole remaining asset—the Nashboro Realty.

As part of the same transaction, InSouth sold its right to payment under the Amended Note to the Nashboro Village 14 Living Trust ("the Trust")—which Defendant established through another company he owned, Vastland Development Partnership of Davidson County, Tennessee. Defendant was Vastland's sole owner, and the Trust held the Amended Note for Vastland's benefit. Although the Loan had a remaining balance of nearly $500,000, Defendant was able to purchase it from InSouth for only $250,000.

In short, the July 2015 transaction re-collateralized the Loan, extended its maturity date, rescinded Defendant's personal liability, and gave Defendant a legally enforceable right to payment against Flintlock. Defendant later extended the Loan's maturity date to July 2021.

Plaintiff, however, was unaware of the Amended Note, deed of trust, and allonge until 2019.

In March 2021, Plaintiff, individually and on behalf of Flintlock, commenced this action by filing a complaint against Defendant for breach of contract, unjust enrichment, and breach of fiduciary duty.[2] Plaintiff alleged, *inter alia*, that Defendant exceeded his authority under the Operating Agreement when he executed the Amended Note and encumbered the Nashboro Realty. Moreover, Plaintiff asserted that the foreclosure deficiency was no longer collectable from Flintlock when Defendant executed the Amended Note because the two-year statute of limitations for deficiency judgments had expired. *See* Tenn. Code Ann. § 35-5-118(d). Thus, Plaintiff asserted that Defendant breached his fiduciary duty and was unjustly enriched because he "shift[ed] his personal

---

[2] Plaintiff also asserted a claim for breach of fiduciary duty, but the trial court dismissed that claim as untimely under the applicable statute of limitations. That decision is not at issue on appeal.

liability in the form of a personal guaranty to InSouth Bank for a deficiency note onto Flintlock" and then bought the Amended Note at a discount "for his own benefit."

In his answer, as amended, Defendant asserted that his execution of the Amended Note and associated documents was authorized by the Written Consent. Moreover, Defendant argued that the Loan was still collectable by InSouth when the Amended Note was executed because—according to Defendant—the statute of limitations was tolled by Defendant's post-foreclosure negotiations with InSouth. Thus, Defendant argued that his execution of the Amended Note had "saved Flintlock extra costs associated with litigation that would have surely commenced if the negotiations had not been completed." Defendant also asserted that Plaintiff's claim for breach of fiduciary duty was barred by the statute of limitations in Tennessee Code Annotated § 48-249-407.

Accordingly, in July 2023, Defendant moved for summary judgment on Plaintiff's breach of fiduciary claim based on the statute of limitations. Plaintiff did not oppose the motion and, thus, the trial court granted it and dismissed Plaintiff's claim for breach of fiduciary duty.

After a bench trial on the remaining claims in November 2023, the trial court found that the Written Consent authorized Defendant to execute the Amended Note and deed of trust. Thus, the court held that Plaintiff failed to prove his claim for breach of contract. Moreover, because the Written Consent was "a valid and enforceable contract covering the subject matter," the court concluded that Plaintiff had no right to relief under a theory of unjust enrichment.

The trial court also addressed Defendant's request for an award of attorney fees under § 13.5 of the Operating Agreement, which entitled the prevailing party to such award in any action "to obtain a judicial construction of th[e] Agreement or to secure enforcement thereof." Although the court found Defendant was the prevailing party, it held that Defendant was not entitled to an award under § 13.5 because Plaintiff's action was an attempt "to obtain damages for breach of the [Operating Agreement]" and not an attempt "to secure enforcement" of the Agreement.

This appeal followed.

### ISSUES

Defendant raises two issues on appeal:

1. Whether the trial court erred by denying Defendant's request for attorney's fees and expenses as the prevailing party under the fee-shifting provision of the Operating Agreement when the trial court determined that Defendant did not breach the Operating Agreement.

2. Whether Defendant is entitled to recover his attorney's fees and expenses on appeal pursuant to the terms of the Operating Agreement.

Plaintiff raises two issues:

1. Whether the trial court erred by rejecting Plaintiff's breach of contract claim where (a) the Operating Agreement clearly requires the consent of both members to incur debt or encumber Flintlock's assets; and (b) the Written Consent relied upon by the trial court did not authorize Defendant to encumber Flintlock's property.

2. Whether the trial court erred by rejecting Flintlock's unjust enrichment claim where (a) Flintlock conferred a benefit upon Defendant when Defendant foisted his personal guaranty obligations onto Flintlock by taking out a new loan in Flintlock's name for the deficiency Defendant owed, securing the new loan with separate property of Flintlock's, and then buying the new loan, (b) Defendant appreciated that benefit, and (c) it would be unjust for Defendant to retain that benefit without any payment.

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, "appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006). Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

### I. BREACH OF CONTRACT

Plaintiff asserts that the trial court erred by dismissing his claim for breach of contract because the Operating Agreement required Defendant to obtain Plaintiff's consent before incurring debt for Flintlock or encumbering Flintlock's property.

To prove his contract claim, Plaintiff had to establish by a preponderance of the evidence (1) "the existence of a valid and enforceable contract"; (2) "a deficiency in the

performance amounting to a breach"; and (3) "damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). It was undisputed that the Operating Agreement was a valid, enforceable contract and that the Operating Agreement required Defendant to obtain Plaintiff's consent before incurring new debt or encumbering Flintlock's assets. But it was also undisputed that the Written Consent gave Defendant authority "to amend, modify, extend, and renew" "the Loan" and to encumber Flintlock's assets for that purpose.[3] Thus, the dispositive issue is whether the Amended Note was an amendment, modification, extension, or renewal of the Loan as contemplated by the Written Consent.

Plaintiff argues that the Amended Note was a new debt because "[t]he 'Loan' had been extinguished through foreclosure and reduced to a deficiency of $468,786.62" and "the deficiency became uncollectable from Flintlock two years later on April 19, 2015," due to the expiration of the statute of limitations.[4] Accordingly, Plaintiff contends that Defendant's authority under the Written Consent to encumber assets "to secure such Loan" did not give Defendant authority to encumber assets to secure the Amended Note.

While, on its face, Plaintiff's argument is persuasive, we note, as Defendant did in his reply brief, that "[Plaintiff's] brief conspicuously lacks citation to a single case to support that proposition." Moreover, as Defendant argues in his brief, the expiration of the statute of limitations bars only the right to enforce a debt in court:

> In most states, "a debt remains a debt even after the statute of limitations has run on enforcing it in court." The law recognize[s] that even if a creditor cannot enforce a debt "without facing a complete legal defense

---

[3] The Written Consent provided in relevant part as follows:

> 2) RESOLVED, the Authorized Officer is hereby authorized and empowered in the name and on behalf of this LLC to execute and deliver to Lender, in the form required by Lender, documents **to amend, modify, extend and renew the Loan** . . . .
>
> .   .   .
>
> 4) FURTHER RESOLVED, that the Authorized Officer be and hereby is authorized and empowered to do any acts, **including but not limited to the assignment, delivery, pledge, or hypothecation from time to time with Lender of any or all assets of this LLC to secure such Loan, renewals and extensions**, and to execute in the name and on behalf of this LLC, any instruments or agreements deemed necessary or proper by Lender, in respect of the collateral securing any indebtedness of this LLC; . . . .

(Emphasis added).

[4] The parties stipulated that the statute of limitations on actions for a deficiency judgment is two years under Tennessee Code Annotated § 35-5-117(d)(1)(A).

to it," "[l]egal defenses are not moral defenses." Creditors are free, absent other circumstances, "to let the debtor know what the debt is and to ask her to pay it," and "[f]or some individuals, such letters may offer a welcome solution to an outstanding debt." Indeed, "even if the statute of limitations makes [a] debt legally unenforceable, it does not cancel the debt as a liability. A statute of limitations is a rule of procedure. Rules of procedure change only the procedures or remedies that a party can seek, not the party's underlying substantive rights."

(Citations omitted) (first quoting *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 396–97 (6th Cir. 2015); then quoting *United of Omaha Life Ins. Co. v. Kay*, 751 F. App'x 636, 639 (6th Cir. 2018)).

Tennessee cases support the above reasoning. For example, in *Connecticut Mutual Life Insurance Co. v. Dunscomb*, 69 S.W. 345 (Tenn. 1902) the Court held that a statute of limitations defeats "simply the remedies upon a debt" but "does not operate, in law, as a discharge of the debt itself, which remains." *Id*. at 346. As the Court explained:

"The statute of limitations, defeating simply the remedies upon a debt, does not operate, in law, as a discharge of the debt itself, which remains, so that, where negotiable instruments have been deposited as collateral security for the payment of a loan or debt, the pledgee is entitled to retain possession of the same as against the pledgor, notwithstanding the statute of limitations might be pleaded to an action on the original debt." "Since statutes of limitation, except in special cases, bar the remedy, merely, and do not destroy the right, it is a generally accepted principle that where the security for a debt is a lien on property, real or personal, the fact that the right of action on the principal obligation is barred does not impair the remedy at law or in equity to enforce the lien, to which a different limitation may be applicable. By analogy to the rule that, where a plaintiff has two remedies for the same right, the bar of one does not affect his right to exercise the other, a creditor may enforce his lien upon the security, although the virtual effect may be that he will enforce payment of a barred obligation." "The holder of a note, with whom collaterals have been deposited, has, while the statute is running, two remedies,—one against the maker, by suit; the other against the collaterals. If he loses the first by lapse of time, he still has the second."

*Id*. at 346–47 (citations omitted) (first quoting William Colebrooke & George A. Benham, Treatise on the Law of Collateral Securities as Applied to Negotiable, Quasi-Negotiable, and Non-Negotiable Choses in Action 189 (2d ed. 1898); then quoting 19 Am. & Eng. Enc. Law 177 (2d ed.); then quoting *In re Hartranft's Est.*, 26 A. 104, 105 (Pa. 1893)).

Applying Tennessee law, the United States Bankruptcy Court in *In re Broadrick*, 532 B.R. 60 (Bankr. M.D. Tenn. 2015) noted that "[t]he Tennessee statute of limitations on collection of a debt does not extinguish a creditor's rights in the debt, only the remedy." *Id*. at 74 (citing *Jones v. Methodist Healthcare*, 83 S.W.3d 739 (Tenn. Ct. App. 2001)). As the court there explained, "[s]tatutes of repose are substantive and extinguish both the right and the remedy while statutes of limitation are procedural, extinguishing only the remedy." *Id.* (quoting *Jones*, 83 S.W.3d at 743). And in *Rankhorn v. Sealtest Foods*, 479 S.W.2d 649 (Tenn. Ct. App. 1971) this court noted the rule that "the statute of limitations only bars the remedy and does not extinguish the substantive right." *Id*. at 722–23.

Here, Flintlock agreed to assume the Loan as payment for the Sumner Realty, thus indebting itself to InSouth for approximately $1 million. But Flintlock did not pay, and InSouth foreclosed on the Sumner Realty. The foreclosure proceeds were applied toward the Loan's remaining balance, leaving nearly $500,000 unpaid. Considering the foregoing authority and the relevant facts, we conclude that InSouth's foreclosure on the collateral neither released nor "extinguished" Flintlock's duty to pay the remaining debt—even after the expiration of the statute of limitations. The essential function of the Amended Note was to extend Flintlock's time for repayment, not to make a new loan.

For these reasons, we agree with the trial court's determination that the Written Consent authorized Defendant's execution of the Amended Note and the deed of trust for the Nashboro Realty. Accordingly, we affirm the court's dismissal of Plaintiff's contract claim.

## II. Unjust Enrichment

Plaintiff contends that the trial court erred by dismissing his unjust enrichment claim on the ground that an enforceable contract existed between the parties. Plaintiff asserts that there was no contract "between the parties" because Flintlock was not a party to the Operating Agreement. Defendant disagrees, arguing that, "although not a signatory, [Flintlock] was nonetheless a party to the Operating Agreement."

"[T]he elements of an unjust enrichment claim are (1) '[a] benefit conferred upon the defendant by the plaintiff', (2) 'appreciation by the defendant of such benefit', and (3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Fam. Tr. Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 304 (Tenn. 2024) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005)). However, as a threshold matter, a plaintiff cannot recover under a theory of unjust enrichment when the parties have a valid, enforceable contract on the same subject matter. *See Est. of Lyons v. Baugh*, No. M2017-00094-COA-R3-CV, 2018 WL 3578525, at *6 (Tenn. Ct. App. July 25, 2018) (citing *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991); *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 480–81 (Tenn. Ct. App. 2016)).

The trial court held that Flintlock's unjust enrichment claim was barred because the Written Consent "was a valid and enforceable contract covering the subject matter." Flintlock contends this was erroneous because Flintlock was "not a party to the Operating Agreement or the Written Consent." Assuming for the sake of argument that Flintlock is correct, we nonetheless affirm the trial court's dismissal of his claim for different reasons.

"The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." *Fam. Tr. Servs. LLC*, 693 S.W.3d at 305 (quoting *Freeman Indus.*, 172 S.W.3d at 525). Flintlock contends that it would be inequitable for Defendant to keep the benefits he received because Defendant "was not acting in the best interest of the LLC" when he negotiated the Amended Note. This amounts to an allegation that Defendant breached his fiduciary duty.[5] *See Commissioners of Powell-Clinch Util. Dist. v. Util. Mgmt. Rev. Bd.*, 427 S.W.3d 375, 389 (Tenn. Ct. App. 2013) (defining "fiduciary duty" as "a duty to act with the highest degree of honesty and loyalty toward another person and **in the best interests** of the other person" (quoting *Black's Law Dictionary* 545 (8th ed. 2004))).

Although Flintlock asserted a claim for breach of fiduciary duty, the trial court dismissed that claim at the summary judgment stage based on the expiration of the statute of limitations in Tennessee Code Annotated § 48-249-407.[6] That statute provides:

> Any action alleging breach of fiduciary duties by members, managers, directors or officers, including alleged violations of the standards established in § 48-249-403 or § 48-249-404, must be brought within one (1) year from the date of the breach or violation; provided, that in the event the alleged breach or violation is not discovered nor reasonably should have been discovered within the one-year period, the period of limitation shall be one (1) year from the date the alleged breach or violation was discovered or reasonably should have been discovered.

Tenn. Code Ann. § 48-249-407.

Because § 48-249-407 applies to "**any** action **alleging** breach of fiduciary duties," we conclude that it applies to Flintlock's unjust enrichment claim, which essentially alleges that Defendant's enrichment was unjust because he acted contrary to the best interest of the company. Consequently, Plaintiff had to file his claim within "one (1) year from the

---

[5] Both breach of fiduciary duty and unjust enrichment claims fall within a category of equitable claims for restitution. *See* Restatement (Third) of Restitution and Unjust Enrichment § 43 (2011) ("A person who obtains a benefit . . . in breach of a fiduciary duty . . . is liable in restitution to the person to whom the duty is owed.").

[6] Significantly, Plaintiff did not oppose the motion for summary judgment.

- 9 -

date the alleged breach or violation was discovered or reasonably should have been discovered." *See id*.

Defendant's alleged breach of duty occurred in July 2015, but Plaintiff testified that he did not find out about the breach until 2019. Still, Plaintiff did not file his complaint until March 2021. Thus, Plaintiff's unjust enrichment claim was barred by § 48-249-407.

For these reasons, we affirm the trial court's dismissal of Plaintiff's unjust enrichment claim, albeit on different grounds. *See City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n.18 (Tenn. Ct. App. 2004) ("The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." (citations omitted)).

## III. ATTORNEY'S FEES

Defendant contends that the trial court erred by denying his request for attorney's fees under § 13.5 of the Operating Agreement.

Section 13.5 of the Operating Agreement provides:

In the event the Company or any party to this Agreement should initiate litigation against the Company or any other party **to obtain a judicial construction** of this Agreement or **to secure enforcement** thereof, the attorney's fees and expenses of the prevailing party in such proceeding shall be paid by the non-prevailing party.

(Emphasis added).

The trial court's ruling on this issue reads as follows:

The Court does not find that this proceeding was "to secure enforcement" of the Operating Agreement, as Plaintiff was attempting to obtain damages for breach of same and the fiduciary duty and unjust enrichment claims were not based upon the Operating Agreement.

"[P]arties who have prevailed in litigation to enforce their contractual rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees." *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). These fee-shifting provisions "must be enforced as written regardless of whether the parties are before a trial court or an appellate court." *Id*. at 478.

Defendant asserts (1) that Plaintiff sought "to obtain a judicial construction of [the Operating Agreement]" because Plaintiff "asked for the Court to determine that various terms of the Operating Agreement were breached" and (2) that Plaintiff "sought

- 10 -

to secure enforcement thereof" because "in order to prevail on his breach of contract claim, [Plaintiff] had to prove the existence of an **enforceable** contract." (Emphasis in original).

Plaintiff asserts (1) that he did not seek a "judicial construction" of the Operating Agreement because he did not assert a claim for declaratory judgment and (2) that he did not seek to enforce the Operating Agreement because he did not seek injunctive or other equitable relief.

In general, "construe" means "[t]o analyze and explain the meaning of (a sentence or passage)" and "enforce" means "[t]o give force or effect to"; "to compel obedience to"; or, "[l]oosly, to compel a person to pay damages for not complying with (a contract)." Black's Law Dictionary (12th ed. 2024). "Enforcement usually takes the form of an award of a sum of money due under the contract or as damages." Restatement (Second) of Contracts § 345 (1981); *see also Clevert v. Jeff W. Soden, Inc.*, 400 S.E.2d 181, 183 (Va. 1991) ("'Enforcement' of a contract includes a recovery of damages for any breach, whether total or partial." (citing Restatement (Second) of Contracts §§ 345(b), 346 cmt. (a) (Am L. Inst. 1981))); Restatement (Second) of Contracts ch. 16, topic 3, intro. note (Am. L. Inst. 1981) ("Specific performance and injunction are alternatives to the award of damages as means of enforcing contracts.").

Here, Plaintiff asserted a claim for damages based on Defendant's alleged breach of the Operating Agreement, which required the trial court to both construe and enforce the Operating Agreement. Accordingly, we conclude that Plaintiff sought to construe and to enforce the Operating Agreement; thus, Defendant had the right to an award of his reasonable attorney's fees incurred in defending against the breach of contract claim, including those fees incurred on appeal. *See Eberbach*, 535 S.W.3d at 478.

### IN CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion, including the determination of the amount of attorney's fees to which Defendant is entitled. Costs of appeal are assessed against the appellant, Jim Spangler.

_____
FRANK G. CLEMENT JR., P.J., M.S.